715 F.2d 486
 SOUTHLAND ROYALTY COMPANY, Phillips Petroleum Company, Shell
Oil Company, Chevron U.S.A., Inc., the Superior Oil Company,
the Union Oil Company of California, Wilshire Oil Company of
Texas, Anadarko Production Company, and Texaco, Inc.,
Plaintiffs, Appellants, Cross-Appellees,
State of Utah, Lynn C. Baker, individually, and as Treasurer
of the State of Utah, Utah State Tax Commission, David L.
Duncan, Chairman, and Douglas Sonntag, Georgia B. Peterson
and Robert D. Bowen, individually, and as members of the
Utah State Tax Commission, Utah State Board of Oil, Gas and
Mining, Charles Henderson, Chairman, and John L. Bell,
Thadis W. Box, C. Ray Juvelin, Edward T. Beck, Constance K.
Lundberg, and E. Steele McIntyre, individually, and as
members of the Utah State Board of Oil, Gas and Mining, San
Juan County, Utah, Edward S. Boyle, William G. Dunow and
Calvin Black, individually, and as Commissioners of San Juan
County, Utah, Marian Bayles, individually, and as San Juan
County Treasurer, and Barbara Montella, individually, and as
San Juan County Assessor, Plaintiffs in Intervention (in
D.C. No. C-79-296), Defendants-Appellees,
v.
NAVAJO TRIBE OF INDIANS, Defendant, Appellee, Cross-Appellant,
Navajo Tribal Council, Peter MacDonald, individually, and as
Chairman of the Navajo Tribal Council, Navajo Tax
Commission, Glen C. George, Robert Shorty, Jr., David C.
Cole, Delfred Wauneka, and William Morgan, Jr.,
individually, and as members of the Navajo Tax Commission,
Defendants, Appellees,
United States of America, James G. Watt, Secretary of the
Interior, Martin E. Seneca, Jr., Acting
Commissioner of the United States Bureau
of Indian Affairs, Defendants,
Appellees, Cross-Appellants.
 Nos. 80-2035 to 80-2038, 80-2067 and 80-2159.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 22, 1983.
 
 Edward L. Barrett, Jr. of Nielsen & Senior, Salt Lake City, Utah (Arthur H. Nielsen, Clark R. Nielsen and John K. Mangum, Salt Lake City, Utah, with him on the brief), for plaintiffs, appellants, cross-appellees Southland Royalty Co., The Superior Oil Co., The Union Oil Co. of California, Wilshire Oil Co. of Texas and Anadarko Production Co.
 Bruce D. Black of Campbell, Byrd & Black, P.A., Santa Fe, N.M., for plaintiff, appellant, cross-appellee Texaco, Inc.
 Alan L. Sullivan of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah (Leonard J. Lewis and Gregory K. Orme, Salt Lake City, Utah, with him on the brief), for plaintiffs, appellants, cross-appellees Phillips Petroleum Co., Shell Oil Co., and Chevron U.S.A., Inc.
 Michael M. Quealy, Asst. Atty. Gen., State of Utah, Salt Lake City, Utah (David L. Wilkinson, Atty. Gen., Richard L. Dewsnup, Dallin W. Jensen and Frank V. Nelson, Asst. Attys. Gen., Salt Lake City, Utah, with him on the brief), for plaintiffs in intervention, defendants-appellees State of Utah and state officials.
 Katherine Ott and Gary Verberg of Vlassis & Ott, Phoenix, Ariz. (George P. Vlassis of Vlassis & Ott, Phoenix, Ariz., Harold G. Christensen and Max D. Wheeler of Snow, Christensen & Martineau, Salt Lake City, Utah, with Katherine Ott, Salt Lake City, Utah, on brief), for defendant, appellee, cross-appellant The Navajo Tribe of Indians, and Navajo defendants-appellees.
 Kay L. Richman, Attorney, Dept. of Justice, Washington, D.C. (Carol E. Dinkins, Asst. Atty. Gen., James J. Clear and Dirk D. Snel, Attorneys, Dept. of Justice, Washington, D.C., with her on brief, David Etheridge, Attorney, Dept. of the Interior, Washington, D.C., of counsel), for defendants, appellees, cross-appellants United States and federal officials.
 Bruce K. Halliday, San Juan County Atty., Monticello, Utah, on brief for plaintiffs in intervention, defendants-appellees San Juan County and county officials.
 Jeff Bingaman, Atty. Gen., State of N.M., Denise D. Fort, Asst. Atty. Gen., Nancy F. Jones and Allison Karslake, Sp. Asst. Attys. Gen., Taxation and Revenue Dept., Santa Fe, N.M., on brief for amicus curiae State of N.M.
 Mark B. Thompson, III of Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, N.M., on brief for amicus curiae Amoco Production Co.
 Before SETH, Chief Judge, and HOLLOWAY and DOYLE, Circuit Judges.
 SETH, Chief Judge.
 
 
 1
 Since the 1950's the appellants have held oil and gas leases on lands in the Navajo Indian Reservation in Utah. The Navajo Tribe imposed taxes on the value of mineral interests and on gross receipts. The State of Utah and San Juan County have been collecting similar taxes for some years. The tribe has not collected taxes as yet under the resolutions imposing the taxes. This action is considered to be against the tribal officials.
 
 
 2
 Phillips Petroleum Company, Shell Oil Company and Chevron U.S.A., Inc. brought suit against the tribe and individual tribal officials individually to have the Navajo taxes declared invalid. A similar challenge was brought by Southland Royalty Company, The Superior Oil Company, The Union Oil Company of California, Wilshire Oil Company of Texas and Anadarko Production Company. These plaintiffs argued in the alternative that state and local taxes were invalid. Texaco, Inc. also brought suit against the tribe but did not challenge the state and local taxes. In the Texaco suit the state and county intervened in order to present their own arguments against the tribe's power to tax oil and gas leases and receipts. All of these cases were consolidated in the district court.
 
 
 3
 The district court dismissed the tribe and tribal entities but kept in the individual defendants. It found that the validity of the Navajo taxes was conditioned upon their approval by the Secretary of the Interior which had not been obtained, and that the state and county taxes were valid. These appeals and cross-appeals followed.
 
 
 4
 As the district court noted, the facts and issues in this case are very similar to those of Merrion v. Jicarilla Apache Tribe, 617 F.2d 537 (10th Cir.). Since the district court opinion in the cases before us the Supreme Court decided Merrion. Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21. These two cases govern the basic issues in this appeal.
 
 
 5
 It is apparent from Merrion that Indian taxation of oil and gas leases is a valid exercise of tribal authority. As the Court there said, 455 U.S. 130, at 137, 102 S.Ct. 894 at 901, the tribe has a power to tax which derives from
 
 
 6
 "the tribe's general authority, as sovereign, to control economic activity within its jurisdiction, and to defray the cost of providing governmental services by requiring contributions from persons or enterprises engaged in economic activities within that jurisdiction."
 
 
 7
 See also Washington v. Confederated Tribes, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10. Thus the Navajo Tribe had the power to tax and the burden on those who attack that power is to show that it has been modified, conditioned or divested by Congressional action.
 
 
 8
 The Supreme Court in Merrion rejected the argument that the Jicarilla Tribe's power to tax had been preempted by the extensive federal regulation of oil and gas leases promulgated pursuant to the Indian Mineral Leasing Act, 25 U.S.C. §§ 396a-396g. Despite that position of the Court the plaintiffs again advance a preemption argument, but they contend that there is a critical difference between the Jicarilla Tribe and the Navajo Tribe in that the Navajo Tribe has not chosen to organize and adopt a constitution under the Indian Reorganization Act of 1934, 25 U.S.C. §§ 461-479 (IRA). Thus taxes imposed by the organized Jicarilla Tribe would be reviewed by the Secretary of the Interior in accordance with the Jicarilla Constitution. Revised Constitution of the Jicarilla Apache Tribe, Art. XI § 1(e). This fact was noted by the Court in Merrion. 455 U.S. 130 at 150, 102 S.Ct. 894 at 905. In contrast, plaintiffs argue the taxes imposed by the Navajo Tribe which has no constitution would not be reviewed by any federal agency and might disrupt federal energy policies. Therefore, the plaintiffs argue the Navajo tax should be held to be preempted even though Merrion held that the similar Jicarilla tax was not.
 
 
 9
 We cannot agree with this argument. The secretarial approval required by the Jicarilla Constitution was not the only factor mentioned in Merrion on the point of federal regulation and preemption of the tribe's power to tax. State taxation might cause similar disruptions of federal policy, and the Court in Merrion, though not faced with the question, clearly indicated that state taxation of these leases was allowed under 25 U.S.C. § 398c. Merrion, 455 U.S. at 150-51, 102 S.Ct. at 908. See also Commonwealth Edison Co. v. Montana, 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884.
 
 
 10
 Further, in Merrion the Court observed that Congress had recognized and allowed for the possibility of Indian taxation in the Natural Gas Policy Act of 1978, 15 U.S.C. § 3320(a), (c)(1) (1976 ed. Supp. III). The tribal taxation contemplated by this statute is not confined to taxes imposed by organized tribes. See 15 U.S.C. § 3316(b)(2)(C)(ii) (1976 ed.) where the meaning of the phrase "Indian tribe" for purposes of the Natural Gas Policy Act is stated. Thus federal energy law expressly allows for tribal taxes, and does so without any suggestion that the power to tax can only be exercised by tribes which have adopted a constitution under the IRA. We therefore hold that the Navajo Tribe's power to tax exists despite extensive federal regulation of the oil and gas activities on the reservation.
 
 
 11
 As the district court observed this state of the law may result in an advantage for tribes which have not adopted a constitution or charter under the IRA. The Navajo Tribe, for example, can impose taxes free from any requirement of approval by the Secretary of the Interior while organized tribes if their constitutions so provide must submit to secretarial review at some stage of the taxation process. The district court was concerned that to permit non-organized tribes an advantage would contravene a Congressional policy of encouraging tribes to organize. The court also considered it possible that Congress had generally intended that the Secretary of the Interior oversee all Indian legislation on oil and gas matters whether promulgated by an organized tribe or not. On these grounds, the district court imposed a requirement of secretarial review over the Navajo taxes.
 
 
 12
 We do not agree that there is support for this requirement in the statutes. The purpose of the IRA was to enable and encourage Indian self-government. Organization under the IRA was not the only form of self-government acceptable to Congress. One of the ways in which the IRA reflects a respect for self-government was in the provision that makes adoption of a constitution optional. 25 U.S.C. § 476. The choice of government is in itself an act of self-government and consonant with Congressional policies. The self-sufficiency of the Navajo Tribe could be impaired by the imposition of a requirement of secretarial approval of its actions as to taxes.
 
 
 13
 Thus we disagree with the position that the delegation of regulatory authority over oil and gas leases to the Secretary requires that the Secretary review and approve these tribal taxes. It is clear that the Secretary's authority does not control every conceivable dispute or concern over Indian leases. Poafpybitty v. Skelly Oil Co., 390 U.S. 365, 88 S.Ct. 982, 19 L.Ed.2d 1238. A requirement of secretarial approval would be directed not so much to regulatory uniformity as to the control of Indian affairs versus self-government. If the Congressional intent with regard to secretarial approval of Indian taxation of oil and gas lands is ambiguous then, as the Supreme Court reiterated in Merrion, 455 U.S. at 152, 102 S.Ct. at 909 (quoting White Mountain Apache Tribe v. Bracker, 448 U.S. 136 at 143-44, 100 S.Ct. 2578 at 2583-84, 65 L.Ed.2d 665):
 
 
 14
 " 'Ambiguities in federal law have been construed generously in order to comport with ... traditional notions of sovereignty and with the federal policy of encouraging tribal independence.' "
 
 
 15
 Thus we must reverse that part of the district court's holding which conditioned the validity of the Navajo taxes upon the review and approval by the Secretary of the Interior, and hold that such approval is not here required.
 
 
 16
 The plaintiffs argue also that the Indian taxes offend the Commerce Clause of the United States Constitution. This claim is partially disposed of by the analysis in Merrion, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21. The Court there held that it was not necessary to reach the question of the applicability of the Commerce Clause to Indian reservations in the case of the Jicarilla tax because Congress had specifically allowed those tribes organized under the IRA to tax. Nevertheless, the Court included a Commerce Clause analysis and determined that the Jicarilla tax would survive judicial scrutiny under the Commerce Clause. The Court held that the Jicarilla tax did not discriminate against interstate commerce. The Navajo tax is similar in its legal incidence and in our view should be upheld under Merrion.
 
 
 17
 The plaintiffs further claim that they should be permitted to conduct discovery to determine how the tribe intends to use the proceeds of the tax. The purpose of this would be to see whether the amount of the tax is fairly related to the services intended to be provided by the tribe. This inquiry is related, it is urged, to the test of Commerce Clause validity set out in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326. We, however, agree with the district court that discovery would be inappropriate because no tax has yet been collected and predictions as to its use would be speculative. Discovery now could not yield any information relevant to validity under the Commerce Clause. Furthermore, although the amount sought to be collected is substantial, although at best a rough estimate, it is insignificant by common knowledge in relation to the very large balances in the funds the tribe owns in its own right, and thus again presents no basis for discovery at this time.
 
 
 18
 The other argument advanced by plaintiffs to institute discovery proceedings was to "bolster their claim that the Navajo Business Activity Tax unlawfully discriminated against interstate commerce in favor of intra-Reservation commerce." Brief of plaintiffs-appellants Phillips Petroleum Company, Shell Oil Company and Chevron U.S.A., Inc. at 30. No description of the information that might be the object of discovery is given, while the allegations that the tax is discriminatory are all based on provisions on the face of the Act. This is not surprising as the tax has never been collected and no practical effects could be shown. Thus discovery would be premature under this claim as well.
 
 
 19
 The plaintiffs make a final argument with regard to the Commerce Clause. They claim that if the State of Utah's right to tax oil and gas leases on Navajo land is upheld the companies will be subject to multiple tax burdens. However, a multiple tax burden is not necessarily unconstitutional. Washington v. Confederated Tribes, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10. The plaintiffs have a taxable nexus with two governments and must accept the tax burdens. Western Live Stock v. Bureau, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823. In Mobil Oil Corp. v. Commissioner of Taxes, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510, the Supreme Court held that nothing in the Constitution required allocation of tax power to one authority rather than apportionment between two. As long as the extent of taxation does not exceed the nexus between the sovereign and the taxpayer the tax is lawful even where, as here, another also has a right to tax. The scope of taxation is limited by the fact that a similar tax could not be imposed with equal right by any other states or tribes. Merrion v. Jicarilla Apache Tribe, 617 F.2d 537 (10th Cir.).
 
 
 20
 Two final constitutional questions must be considered. The first is couched in the form of an equal protection claim advanced by plaintiff-appellant Texaco Company. Texaco argued that the Navajo tax is of limited application and thus discriminatory in that no Navajo businesses will be affected. Some enterprises are specifically excluded. Texaco asserts that all of the excepted types of establishments on the reservation are owned by Navajos, and most or all other Navajo businesses will be excluded by the standard deduction of $125,000, leaving plaintiffs to bear the entire tax. As we have noted the Council's tax resolutions have not been put into operation. In view of this fact, and the state of the record, it would be premature to consider this equal protection issue on this appeal.
 
 
 21
 Some of the plaintiffs also suggest that there are serious due process and related concerns arising from the fact that only Navajos can participate in the governmental process and in voting for members of the tribal government. It is apparent that non-Navajos are excluded from participation in the process which imposes the taxes. They are excluded from the other tribal governmental processes. As the Government states in its brief at 6, "Council members are elected by the Navajo people." The Government refers to the "Navajo Nation" as does the tribe as a separate "nation" within Utah. It also appears that the tribe can exclude from the reservation non-Navajos. It is in this context, and in the absence of a tribal constitution, that the plaintiffs raise the questions as to what if any remedy they might have to challenge the severe enforcement devices included in the Council's resolutions or any other matters of assessment, valuation and collection. The lessees were, of course, granted a leasehold interest in the reservation as an oil and gas lease provides. The tax apparently recognizes the existence of such an interest and possessory right. But again we must consider these issues to be premature and do not consider them.
 
 
 22
 The state taxation of the same activities must be examined. We have already noted that taxation by two entities is not necessarily unconstitutional. The plaintiffs ask us to decide, however, a different question which is not in any way bound to the validity of the Navajo tax. We are asked to decide the validity of a state severance tax on oil produced from Navajo lands. This state tax is challenged on the theory that 25 U.S.C. § 398c which permits such a tax has been repealed by the Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396a-396g. This question is outside the jurisdiction of the federal courts as it concerns the validity of the state tax. 28 U.S.C. § 1341 states:
 
 
 23
 "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."
 
 
 24
 Several recent Supreme Court cases have reaffirmed the limiting power of this statute. California v. Grace Brethren Church, 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93; Fair Assessment in Real Estate Assn. v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271; Rosewell v. LaSalle National Bank, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464. In Grace Brethren Church, section 1341 operated to bar jurisdiction even where, as here, the interpretation of a federal statute was at issue.
 
 
 25
 The plaintiffs argue that there is no "plain, speedy and efficient" remedy at state law. They contend that with respect to some of the state taxes at issue that the remedies are administrative, and Utah law precludes the examination of constitutional issues in an administrative forum. It is true that the first step in a state challenge of some of the taxes at issue is before the State Tax Commission. See Utah Code Ann. §§ 59-24-1 through 9 (Tax Court Act). This is only the first step and under Utah law this proceeding is for the purpose of permitting the Commission to correct administrative errors rather than to consider constitutional challenges. Shea v. State Tax Commission, 101 Utah 209, 120 P.2d 274. The second step of the state challenge may, however, at the option of the complainant, be brought in district court and will be "original, independent proceedings and shall be tried ... de novo," Utah Code Ann. § 59-24-3(1), and apparently all issues may be raised and considered. The procedure of going first to the Tax Commission, then to district court spells out in statutory form a requirement of exhaustion of administrative remedies. In Rosewell v. LaSalle National Bank, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464, the Supreme Court upheld a procedure requiring exhaustion of administrative remedies as "plain, speedy and efficient" for purposes of section 1341.
 
 
 26
 It is the judgment of this court that the judgment of the trial court is reversed insofar as it conditioned the validity of the taxes imposed by the tribe on the approval of the Secretary of Interior, but is otherwise affirmed.