**SUPERIOR OIL COMPANY, et al.,**
**Plaintiffs-Appellants,**

v.

**The UNITED STATES of America, et al., Defendants-Appellees.**

No. 85–1330.

United States Court of Appeals, Tenth Circuit.

Aug. 13, 1986.

Thomas C. Jepperson (Arthur H. Nielsen, with him on the brief) of Nielsen & Senior, Salt Lake City, Utah, for plaintiffs-appellants.

Edward J. Shawaker (F. Henry Habicht, Asst. Atty. Gen., Washington, D.C., Brent D. Ward, U.S. Atty., Joseph W. Anderson, Asst U.S. Atty., Salt Lake City, Utah, and Robert L. Klarquist, Atty., Dept. of Justice, Washington, D.C., with him on the brief), Atty., Dept. of Justice, and Louis Denetsosie (R. Randall Harrison, Window Rock, Ariz., and Kevin N. Anderson, Salt Lake City, Utah, with him on the brief), Navajo Nation Dept. of Justice, for defendants-appellees.

Before BARRETT, SEYMOUR and BALDOCK, Circuit Judges.

BARRETT, Circuit Judge.

Superior Oil Company (Superior) appeals from the District Court's dismissal of its amended complaint seeking declaratory, mandamus and injunctive relief against the United States, the Secretary of the Interior, other officers of the Department of the Interior, the Navajo Tribe of Indians, its Council, and certain named tribal departments and certain Navajo Indians, sued individually and in their official capacities. Jurisdiction was asserted under the Fifth Amendment and the Fourteenth Amendment of the Constitution of the United States, 28 U.S.C. § 1331 (federal questions), § 1332 (diversity of citizenship), § 1343 (mandamus), § 2201 (declaratory relief), 5 U.S.C. § 701, *et seq.* (Administrative Procedure Act), 25 U.S.C. § 1301 (Indian Civil Rights Act), and 25 U.S.C. §§ 396a–396g (Omnibus Indian Mineral Leasing Act of 1938).

The action involves rights asserted by Superior to explore for oil and gas on tribal lands under oil and gas leases granted by the Navajo Tribe, and approved by the Secretary pursuant to 25 C.F.R. § 211.20(b) (1984). Superior claims that the statutory and regulatory scheme governing Indian oil and gas leases is such that the Secretary of the Interior has exclusive regulatory control and that this authority preempts regu-latory control by the Navajo Tribe. Further, Superior contends that the Secretary has failed and refused to act to approve certain assignments. Superior also claims that the Navajo Tribe and certain Navajo officials have intentionally and purposely sought to deprive Superior of its property interests in the oil and gas leases by refusing to allow Superior to undertake seismic operation with the sole purpose and intent of having the leases expire, constituting unlawful confiscation of Superior's property rights. Superior alleges that said action is not within the scope of the Tribe's sovereign powers and is in conflict with an overriding national interest to prevent such deprivation. The District Court, in granting defendants' Motion for Summary Judgment, dismissing Superior's complaint, ruled that (a) the court was without jurisdiction to grant relief against the Navajo Tribe and its named officials based upon the sovereign immunity of the Tribe, and (b) there is no case or controversy involving the United States or its named officials. The court further ruled that the appropriate initial forum for presentation of Superior's complaint is with the Tribal Court. *See, Superior Oil Company v. United States,* 605 F.Supp. 674 (D.Utah, C.D., 1985).

**The Background**

In viewing the evidence in the light most favorable to Superior, as we must in light of the trial court's grant of a summary judgment in favor of defendants, *see Clark v. Atchison, Topeka & Santa Fe Ry.,* 731 F.2d 698 (10th Cir.1984), the record reflects the following:

Superior and Arapaho Petroleum, Inc., non-Indian corporations, filed this action seeking declaratory and injunctive relief requiring approval of certain oil and gas lease assignments and permits to undertake pre-drilling seismic exploration on tribal lands subject to the leases. The lands concerned are situate in San Juan County, Utah, within the boundaries of the Navajo Reservation.

One count concerned two leases executed by the Tribe, as Lessor, approved by the Secretary of the Interior, and Arapaho, as Lessee. After issuance, Arapaho designated Superior as its operator and agent under a Farmout Agreement. Superior thereafter undertook seismic activities on the leased lands pursuant to permits issued by the Tribe and Secretary and then obtained drilling permits. Before drilling, Superior determined that further seismic exploratory work was required in order to judge the best location for the wells. Prior thereto the chairman of the Navajo Tribal Council had requested that Arapaho renegotiate the royalty rate on each of its leases. Even though Superior believed that the Secretary of Interior had exclusive authority and right to issue such permits, it requested of the Navajo Tribal Council, as an expression of cooperation, permission to undertake the seismic testing. The Navajo Council had promulgated ordinances requiring, *inter-alia*, tribal approval of assignments of oil and gas leases and permits to undertake seismic tests all in the interest of public safety and tribal economic security. When it became apparent that the tribal officials would not grant Superior's seismic permits prior to expiration of the primary terms of the leases, Superior filed this suit to avoid the expiration of the ten year term of the leases. A preliminary injunction was granted declaring the leases extended so long as the Navajo Tribe failed to act on the seismic permit requests. The Secretary of the Interior refused to approve the issuance of the seismic permits without the approval of the Tribe. The Department of the Interior suspended the primary term of one of the two leases for the reason that the laws, regulations and policies of the Navajo Tribe had denied approval of Superior's applications for permits to drill. (R., Vol. V, Exh. 71, p. 3.) The other lease came into production before expiration of the primary term and is no longer at issue.

Superior, in recognition of a dispute concerning the proposed seismic testing insofar as surface damages were concerned, offered to escrow surface damage money, which had been a standard procedure of the Navajo Land Development office. (R., Vol. IV, Exh. 4, p. 2.) This request was likewise denied. A staff employee of the Navajo Tribe had been instructed to find any reason to deny Superior's request. (R., Vol. XV, pp. 143, 144.) The only reason given by the Tribe for refusal to act on the permits was that only Arapaho was entitled to make such applications because it alone was entitled to conduct drilling operations under the leases. This position was apparently anchored to the view that the Farmout Agreement between Arapaho and Superior did not accomplish an assignment of lessee rights under the leases to Superior. The Tribe required, under its ordinances, that assignments of leases be submitted to the Tribe for approval. Superior has not recognized this authority and has submitted the request for seismic permits only in the spirit of cooperation.

The second count of the amended complaint related to a lease which had been issued to Gulf Oil Corporation, as lessee. In this instance, too, Superior had been designated as operator and local agent, and thereafter Superior requested a seismic permit from the Secretary and the Tribe. Thereafter, Gulf assigned the lease to Superior. Superior alleged that the Tribe willfully failed and refused to act on the assignment or the application for seismic permit, with intention to require expiration of the lease so as to renegotiate better lease terms for the Tribe. The tribal chairman denied the right to undertake seismic operations on the lands covered by this lease because it "[w]ould be in the economic interests of the Tribe" if the lease should expire. (R., Vol. IV, Exh. 35.)

The third count involved some seven leases relative to which Superior had filed for approval of assignments or operating rights. No action has been taken by the Secretary or the Tribe. Superior sought mandamus relief to compel the Secretary and the Navajo Tribe to approve the assignments of leases or to declare that tribal approval was not required. Superior's position relative to the Secretary of Interior

was that the Secretary was without authority to grant seismic permits or, if so, they should have been granted; further, that the Secretary has sole authority to approve assignments or if such approval is dependent upon prior approval of the Tribe, the court should order the Secretary to approve the assignments.

The Navajo Tribe's ordinance of December 16, 1983, provided that no assignment of mineral interests in Navajo lands shall be effective until approved by the Chairman of the Navajo Tribal Council. This ordinance did not meet with the approval of the Acting Area Director of the Bureau of Indian Affairs. (R., Vol. II, p. 313.) Even so, the District Court concluded that the ordinance is authorized under the inherent sovereignty retained by the Navajo Tribe "[t]o determine whether to issue a seismic permit to lessees" and "to approve and disapprove assignments of leases and operating rights." 605 F.Supp. at 684. The District Court observed that "[T]he conduct that the plaintiffs here assert is beyond the Tribe's sovereignty is directly related to the Tribe's economic security" and that the Tribe "would lose some of its economic security if it were unable to regulate the sale of those resources." Id. at 683, 684. On this premise, the court ruled that it is discretionary with the Chairman of the Tribal Council whether to approve or disapprove all requests for permits and that the acts of the chairman are acts of the sovereign, over which the court has no jurisdiction. Id. at 685. Thus, although the District Court ruled that the doctrine of sovereign immunity shielded both the Tribe and the individual tribal officials (because they acted on behalf of the Tribe), the court expressed the view that the "inescapable result" of Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) and Southland Royalty Co. v. Navajo Tribe of Indians, 715 F.2d 486 (10th Cir.1983), is that the Indian Mineral Leasing Act did not preempt the Navajo Tribe's ordinances which regulate Superior's rights under the subject oil and gas leases, id. at 681, notwithstanding the fact that (a) the Navajo tribal ordinances at

issue will render the leases Superior has contracted for terminated as a result of tribal failure to approve or disapprove seismic permit applications and assignments of oil and gas leases, and (b) the Secretary of the Interior has assumed a passive attitude with regard to the validity, application and reach of the Navajo ordinances. The Secretary's position is equivocal. While recognizing that the "basic" purpose of the Indian Mineral Leasing Act of 1938 is to maximize tribal revenues from reservation lands so as to encourage tribal self-protection, the Secretary nevertheless does recognize that purchasers of tribal oil and gas leases must obtain genuine rights and that tribal laws cannot be sustained if they have the unilateral effect of terminating bargained-for leasing rights, "for in the long run such laws would reduce the money which people would be willing to pay for a tribal lease." (Brief of Appellees, United States of America, et al., pp. 15–17). Even so, the Secretary advises that "A court should be loathe to interfere with a Tribe's sovereign rights on its reservation, in the absence of clear intent by Congress or clear regulatory intent pursuant to the plain will of Congress." Id. at 18. The Secretary states that while the Tribe does have authority to enact and enforce reasonable regulations for the protection of tribal members and tribal property "from the possible harm of seismic testing" it cannot arbitrarily forbid such testing so as to destroy the value of the lease. Id. Thus, although the Secretary has taken no definitive position with respect to the validity of the Navajo Tribe's ordinances as applied (or as a result of failure to apply them) in relation to Superior's requests for seismic permits and assignments, it is clear that the Secretary has placed less emphasis on the Tribe's sovereign immunity than did the District Court.

On appeal, Superior contends that (1) the District Court erred in granting the defendants' Motion for Summary Judgment and dismissing its amended complaint because that court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and is the

proper forum to determine the rights and duties of the parties at issue under the tribal oil and gas leases controlled by federal law; further, the Secretary of the Interior has a duty to act upon the lease assignments and requests to perform seismic tests and should be compelled to act, (2) the Navajo tribal ordinances affecting the Superior lease assignments and requested seismic operations are in conflict or inconsistent with federal regulations, policies and objectives creating an impasse between the Secretary of the Interior and the Tribe; Congress has expressed an overriding interest in national uniformity in the enactment of the Indian Mineral Leasing Act of 1938, *supra*, relating to the development and recovery of oil and gas on Indian lands; thus, exclusive regulatory control and administration of oil and gas operations on Indian lands vests in the Secretary of the Interior, and (3) the Navajo defendants have sought to advance the Tribe's commercial position against Superior under the guise of regulation while seeking termination of Superior's leases for the Tribe's commercial benefit, all of which is inconsistent with and preempted by federal law and overriding national interests.

## I.

### The Jurisdictional Issue

The District Court did not have the guidance of *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) when it entered judgment. That case involved a minor Indian child, a member of the Crow Tribe, who, through his guardian, sued the defendant School District in the Crow Tribal Court for damages resulting from personal injuries. The Indian child was struck by a motorcycle in the parking lot of the school within the Crow Indian Reservation located on land owned by the State of Montana. A default judgment was obtained by the plaintiff. Thereafter, the defendant School District and its insurer filed suit for

injunctive relief to restrain further proceedings in the Tribal Court, invoking the "federal question" provision of 28 U.S.C. § 1331 as a basis for federal district court jurisdiction.[1] The district court granted an injunction against execution of the default judgment, ruling that the Tribal Court had no jurisdiction over the civil action. The Ninth Circuit reversed, holding that the proper forum to determine the scope of jurisdiction over the cause of action was the tribal court rather than the federal district court. Significantly, the Ninth Circuit panel majority held that Indian Tribes, by virtue of their sovereignty, are not constrained by the Fourteenth Amendment's due process and equal protection mandates, but that the Tribes are bound by the Indian Civil Rights Act (ICRA), 25 U.S.C. §§ 1301–41 (1976), which requires tribal courts to exercise jurisdiction consistent with due process and equal protection. Thus, the majority held that the sole and exclusive remedy by an aggrieved party from a claim of a tribal court violation of the ICRA would be by writ of habeas corpus in federal district court, and that a suit to enjoin tribal court proceedings would not be recognized in federal district court. The dissenting circuit court judge opined that the plaintiffs stated a substantial federal question, vesting jurisdiction in the federal district court pursuant to 28 U.S.C. § 1331; however, he agreed that the proper forum, in the first instance, for determining the scope of tribal court jurisdiction is the tribal court, not the federal district court. *See Nat. Farmers Union Ins. v. Crow Tribe*, 736 F.2d 1320 (9th Cir.1984).

The Supreme Court, in reversing and remanding, held that the federal district court did have jurisdiction under 28 U.S.C. § 1331 inasmuch as the action did arise under federal law encompassing the federal question whether the tribal court had exceeded the limits of its jurisdiction. However, the Supreme Court directed that before the federal district court can enter-

---

1. 28 U.S.C. § 1331 provides:
 (a) The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or Treaties of the United States.

tain the question whether the tribal court has power to exercise civil law subject matter jurisdiction relating to civil disputes between Indians and non-Indians arising on an Indian reservation, tribal court remedies must first be exhausted.

 The Supreme Court observed that the right asserted by the petitioners was the right to be protected against an unlawful exercise of tribal court judicial power, based on federal law defining the outer boundaries of an Indian Tribe's power over non-Indians. The petitioners there, just as in the case at bar, contended that federal law had divested the Tribe of that aspect of sovereignty. The Supreme Court, while expressly holding that § 1331, *supra*, vests jurisdiction and power in a federal district court to determine whether a tribal court has exceeded the lawful limits of its jurisdiction, nevertheless required that all available tribal court remedies must first be exhausted. The policy of exhaustion would afford the tribal court the first opportunity to evaluate the factual and legal bases for the challenge and it would require that court to examine carefully the Tribe's sovereignty, the extent to which tribal sovereignty has been altered, divested or diminished, together with a detailed study of relevant statutes, Executive Branch policy embodied in Treaties and elsewhere, and administrative or judicial decisions. The Court left the question whether, during the time period required for exhaustion of Tribal Court remedies, the federal action should be dismissed or merely held in abeyance for determination of the federal District Court.

The reach and extent of a tribal court's jurisdiction over a non-Indian is far from determined. *National Farmers Union Ins. Co. v. Crow Tribe, supra,* detailed the processes required to evaluate such a question. This process is in keeping with the Supreme Court's observation in *Montana v. United States,* 450 U.S. 544, 565–66, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981):

> To be sure, Indian Tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on the Reservations, even on non-In-

dian fee lands. A Tribe may regulate, through taxation, licensing, or other means, the activities of non-members who enter consensual relationships with the Tribe or its members, through commercial dealings, contracts, leases, or other arrangements. A Tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when the conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the Tribe.

We hold that in cases encompassing the federal question whether a tribal court has exceeded its lawful limits of jurisdiction involving an exercise of civil subject-matter jurisdiction in a case such as that presented here, the federal district court is empowered to review a tribal court decision under 28 U.S.C. § 1331. However, the District Court erred in reaching the question whether the Navajo Tribe, its agencies and named officials are immune from the Superior suit by virtue of the doctrine of sovereign immunity before requiring Superior to first exhaust its claim in the tribal court.

## II.

### The Bad Faith Issue

 The District Court relied heavily on a line of decisions which have expounded on the scope of Indian tribal sovereignty, not only in relation to tribal immunity from suit but also in relation to tribal rights to protect tribal economic security. With respect to oil and gas leases entered into pursuant to the Omnibus Indian Mineral Leasing Act, the court stated that: "The inescapable result of *Merrion [Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982)] and *Southland [Southland Royalty Co. v. Navajo Tribe of Indians,* 715 F.2d 486 (10th Cir. 1983)] is that the Omnibus Mineral Leasing Act did not preempt all tribal attempts to regulate mineral leases." 605 F.Supp. 674, 681. "The Tribe derives its authority to regulate oil and gas leases not only from

its powers to control its Territory and to exclude nonmembers from that Territory, but also from its powers to protect its economic security, and to preserve the health and welfare of the members of the Tribe." *Id.* at 683. The court found/ruled that the Navajo Tribe retains the inherent sovereignty to approve and disapprove assignments of leases and operating rights, which has not been limited by statute or treaty, *id.* at 684, and that the Navajo Tribe, through its officers, is not compelled to approve assignments of leases and requests for seismic permits. *Id.* at 684, 685. Impliedly, the District Court found no merit in Superior's allegations that notwithstanding "continued requests and demands and attempts to get action" on requests for seismic permits the Navajo Defendants refused to act thereon and informed Superior that they "would take every possible action to see that said lease expire so that said Defendants could negotiate a new lease with a higher royalty and a bonus." (R., Vol. I., pp. 114–20.)

Footnote 21 of *National Farmers Union Ins. Cos. v. Crow Tribe, supra,* interposed a caveat to the court's requirement that tribal court remedies must first be exhausted before the federal district court can assert jurisdiction under 28 U.S.C. § 1331:

> We do not suggest that exhaustion would be required where an assertion of Tribal jurisdiction "is motivated by a desire to harass or is conducted in bad faith," *cf. Juidice v. Vail,* 430 U.S. 327, 338 [97 S.Ct. 1211, 1218, 51 L.Ed.2d 376] (1977), or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

Throughout this case, the Navajo Tribe and its officers have recognized that federal regulations promulgated by the Secretary of the Interior requiring approval by the Secretary of assignments of oil and gas leases and other such actions are valid; however, they contend that such does not prohibit the Navajo Tribe from promulgat-ing like regulations. This, we submit, is not an adequate response to Superior's complaint that the Navajo Tribe and its named officials have intentionally refused to *act* on the lease assignments and the requests for seismic permits in order to effect termination of the leases for nondevelopment during the primary term. This does constitute an allegation of bad faith on the part of the Navajo Tribe and the named Navajo officials.

■ There are depositions and exhibits in the record on appeal relied upon by Superior to support the contention that the Navajo Tribe and its officers intentionally withheld approvals of assignments and seismic requests in order to force renegotiation of existing leases. Whether these actions are sufficient in fact to constitute bad faith is a question for determination by the District Court. In *Tenneco Oil Co. v. Sac and Fox Tribe of Indians,* 725 F.2d 572 (10th Cir.1984), tribal officials, unhappy with an oil and gas lease, proposed to cancel the lease. Tenneco filed suit in federal district court, contending that the Fox Tribe was preempted from acting by virtue of the federal regulatory scheme and, further, that the proposed action was beyond the power and authority of the Tribe. Jurisdiction was premised on 28 U.S.C. § 1331. The district court granted the Tribe's motion to dismiss both on the basis of the Tribe's sovereign immunity and that no federal question had been raised. We reversed and held that federal question jurisdiction was present. The fact situation in *Tenneco* was strikingly similar to the case at bar. There, too, the lease terms specifically provided that the lessee was to operate under the supervision of the Secretary of the Interior and to abide and conform to any and all regulations of the Secretary then or thereafter in force, except that no regulation could effect or change the rate of royalty or annual rental without written consent of the parties.

The District Court did not specifically address the issue of bad faith and confiscatory actions on the part of the Navajo Tribe and the named Navajo Indian defendants.

This record contains many depositions, affidavits and exhibits. The question exists whether the Navajo Tribe and its officials arbitrarily and intentionally withheld action on the requests of Superior in order to destroy the value of the leases.

### Conclusion

In light of *National Farmers Union Ins. Co. v. Crow Tribe, supra,* we reverse the District Court's ruling that it is without jurisdiction to entertain Superior's amended complaint by virtue of the sovereign immunity of the Navajo Tribe, its agencies and named officials. That decision stands for the proposition that the federal district courts shall exercise jurisdiction in cases such as this involving federal questions, pursuant to 28 U.S.C. § 1331, *after* all available remedies have first been exhausted in the tribal court, *unless* exhaustion would be futile.

In this case, Superior has alleged that the Navajo Tribe, its agencies and named officials have acted in bad faith. The District Court has not specifically addressed this contention.

We reverse the District Court's dismissal of the Superior amended complaint on the basis of the sovereign immunity of the Navajo Tribe of Indians and the individual Navajo officials. We remand to the District Court with instruction to undertake such further proceedings deemed necessary to determine whether the actions of the Navajo Tribe of Indians and the named individual Navajo defendants in withholding consent to assignments of leases and requests for seismic permits were taken in bad faith or motivated by a desire to harass such as to render exhaustion of Navajo Tribal Court remedies futile.

We have not addressed other contentions of error involving issues decided by the District Court including whether (a) the federal regulatory scheme involving oil and gas leasing and operations on Indian tribal lands is such that the Navajo Tribe of Indians is preempted from entering the area, (b) there exists a case or controversy between Superior and the United States, and (c) the individual tribal defendants were acting in their official capacities. We believe that it is premature to reach these contentions.

REVERSED and REMANDED.