# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

No. 00-40088

---

COMSTOCK OIL & GAS INC., Successor by merger
to Black Stone Oil Company; ORYX ENERGY
COMPANY; SUN OPERATING LIMITED
PARTNERSHIP,

Plaintiffs-Appellees-Appellants,

versus

ALABAMA AND COUSHATTA INDIAN TRIBES
OF TEXAS; ET AL,

Defendants,

ALABAMA AND COUSHATTA INDIAN TRIBES
OF TEXAS,

Defendant-Appellee,

MORRIS R. BULLOCK, Individually and as Member of
the Tribal Council of the Alabama and Coushatta Indian
Tribes of Texas; PERRY D. WILLIAMS, Individually
and as Member of the Tribal Council of the Alabama and
Coushatta Indian Tribes of Texas; MELINDA L. SYLESTINE,
Individually and as Member of the Tribal Council of the
Alabama and Coushatta Indian Tribes of Texas; KEVIN P.
BATTISE, Individually and as Member of the Tribal
Council of the Alabama and Coushatta Indian Tribes of Texas;
MCCLAMROCH BATTISE, Individually and as Member of
the Tribal Council of the Alabama and Coushatta Indian Tribes
of Texas; SIDNEY PONCHO, Individually and as Member of
the Tribal Councilof the Alabama and Coushatta Indian Tribes
of Texas; EDWIN D. BATTISE, Individually and as Member
of the Tribal Council of the Alabama and Coushatta Indian
Tribes of Texas,

Defendants-Appellants.

Appeals from the United States District Court

August 27, 2001

Before POLITZ, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This case arises from a dispute regarding the validity of oil and gas leases entered into by the Alabama and Coushatta Indian Tribes of Texas ("the Tribe"), Comstock Oil and Gas Company, and Kerr-McGee Corporation[1] ( collectively "the oil companies").  Defendants-Appellants ( "the tribal council members") contend that the district court prematurely ruled on the existence and jurisdiction of the tribal court and thereby erroneously prevented the oil companies from exhausting their remedies in the tribal court.  The tribal council members also argue that the district court lacked subject matter jurisdiction to hear the oil companies' claims and that the court erred in ruling that the tribal council members were not entitled to sovereign immunity.  The oil companies allege that the district court erred in concluding that the Tribe was, however, entitled to sovereign immunity and by consequently dismissing their claims against the Tribe.  For the reasons assigned herein, we affirm the district court in part, reverse in part, and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

The Tribe is federally recognized under the Alabama and Coushatta Indian Tribes of Texas Restoration Act.  See 25 U.S.C. §§ 731-737.  As such, it controls lands set aside and held in trust for

---

[1]  Kerr-McGee Corporation is the successor to Oryx Energy Company and the General Partner of Sun Operating Limited Partnership.

2

it as a reservation. 25 U.S.C. §§ 733(a), 736(a). Between 1979 and 1993, the Tribe signed nine oil and gas exploration leases with the oil companies granting the right to explore and produce hydrocarbons. Two of the leases were negotiated and executed by the Bureau of Indian Affairs ("BIA") pursuant to the Indian Mineral Development Act of 1982. See 25 U.S.C. §§ 2101-2108. The State of Texas executed the remaining seven leases before the effective date of the Alabama and Coushatta Indian Tribes of Texas Restoration Act, and the BIA approved them.

On October 26, 1998, the Tribe and seven tribal council members filed suit in the United States District Court for the Eastern District of Texas, Lufkin Division, against the oil companies. Alleging that certain oil and gas leases were void because the Secretary of the Interior had not approved them, the Tribe and the tribal council members sought to cancel the leases. In addition, they claimed that the leases were void for deficiencies in production and that the oil companies had misappropriated natural gas liquids extracted from tribal lands. They sought damages in excess of $100,000,000, but dismissed the federal action on December 18, 1998.

On that same date, the Tribe filed suit in a tribal court that was formed after the Tribe initially filed suit in federal court. Again, the Tribe sought to have the leases declared null and void because of deficiencies in execution or production. In the alternative, the Tribe claimed that the leases were void because they had not been approved by the Secretary of the Interior pursuant to 25 U.S.C. § 81.

On February 9, 1999, naming the Tribe and tribal council members as defendants, the oil companies filed a motion for a declaratory judgment that the tribal court is nonexistent and that the disputed leases are in full effect. In response, the defendants moved to dismiss on three grounds. First, they claimed that the oil companies' declaratory judgment action sought to adjudicate the same facts as the tribal court action. Second, they asserted that sovereign immunity deprived the court of

3

personal jurisdiction over the Tribe and the tribal council members in their official capacities. Finally, the tribe and tribal council members contended that the district court lacked subject matter jurisdiction because the oil companies failed to exhaust their tribal remedies.

The district court made the following conclusions. Neither the Tribe nor Congress waived the Tribe's sovereign immunity. Thus, with respect to the Tribe, the court dismissed the oil companies' motion for declaratory judgment for lack of personal jurisdiction. However, the court failed to extend the Tribe's sovereign immunity to the individual tribal council members and accordingly denied the motion seeking to dismiss them for lack of personal jurisdiction. In addition, the court determined that the tribal court was improperly constituted, that the doctrine of exhaustion of remedies was, therefore, inapplicable, and that the exhaustion doctrine did not bar the court's exercise of subject matter jurisdiction. The tribal council members now appeal these findings, and the oil companies cross-appeal the district court's conclusion that the Tribe was entitled to sovereign immunity.

DISCUSSION

I.      Sovereign Immunity

        A.      Tribal Council Members

This Court reviews de novo whether an official is entitled to sovereign immunity. Beck v. Tex. State Bd. of Dental Exam'rs, 204 F.3d 629, 633 (5th Cir. 2000); see also Baker Elec. Coop., Inc. v. Haske, 28 F.3d 1466, 1471 (8th Cir. 1994)(stating that immunity of tribal officials is subject to de novo review).

The district court relied on TTEA v. Ysleta Del Sur Pueblo, 181 F.3d 676 (5th Cir. 1999), in ruling that the tribal council members were not entitled to sovereign immunity against the oil

4

companies' declaratory judgment suit.   But the tribal council members assert that this reliance was misplaced and attempt to distinguish not only TTEA but also Puyallup Tribe, Inc. v. Department of Game of State of Washington, 433 U.S. 165, 97 S. Ct. 2616, 53 L. Ed. 2d 667 (1977), and Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978).  They argue that in each of those cases, the plaintiffs sought to enjoin the defendant tribal officials from carrying out or enforcing allegedly unconstitutional or illegal acts or from overstepping their jurisdictional mandate.  In the present dispute, the tribal council members contend that they were acting lawfully on behalf of the Tribe and, thus, derivatively enjoy the tribe's sovereign immunity.[2]

The tribal council members have merely presented an encore argument before this court. Upon initially addressing this argument, the district court aptly expressed the error of the tribal council members' position.  Comstock, 78 F. Supp. 2d 589, 593 (E.D. Tex. 1999)("Recent authority within the Fifth Circuit, binding on this court, indicates the Defendants' position is in error." (citing TTEA v. Ysleta Del Sur Pueblo, 181 F.3d 676 (5th Cir. 1999)). We agree with the district court.

The tribal council members have incorrectly characterized the import and applicability of TTEA to the case at bar.  It is binding authority on this dispute.  Therefore, the sundry cases that the tribal council members cite from other circuits to buttress their immunity claim, based on their allegedly having been acting within the scope of their authority, are unpersuasive and irrelevant.  The district court correctly concluded that the tribal council members were not entitled to tribal sovereign immunity because, in the Fifth Circuit, tribal officials are not immune from suits for declaratory and

---

[2]  The tribal council members rely on a collage of non-binding cases to support this contention. See, e.g., Snow v. Quinault Indian Nation, 709 F.2d 1319, 1321 (9th Cir. 1983)(stating that "tribal immunity extends to tribal officials acting in their representative capacity and within the scope of their authority"); Imperial Granite Co. v. Pala Band of Mission Indians, 940 F.2d 1269, 1271 (9th Cir. 1991).

5

injunctive relief. TTEA , 181 F.3d at 680-81 (reasoning that the "distinct but similar concept" of tribal sovereign immunity should not extend "further than the now-constitutionalized doctrine of sovereign immunity," which encompasses the proposition that: "State sovereign immunity does not preclude declaratory or injunctive relief against state officials"). Thus, the district court did not err in concluding that the tribal council members are not entitled to sovereign immunity against the oil companies' declaratory judgment action.

B.     Tribe

1.     Jurisdiction

Citing Swint v. Chambers County Commission, 514 U.S. 35, 51, 115 S. Ct. 1203, 131 L. Ed. 2d 60 (1995), the oil companies contend that the district court's interlocutory order holding that the Tribe is immune from suit is "inextricably intertwined" with the tribal council members' appellate issues because they involve the same law and facts. Because the oil companies sought declaratory judgment against the Tribe and the tribal council members, they assert that TTEA is relevant to the resolution of both parties' inquiries. The oil companies argue that this court should, therefore, exercise its pendent jurisdiction to review their cross-appeals challenging the Tribe's sovereign immunity.

The Tribe counters that the analysis of its immunity as a sovereign entity is separate from any determination of whether the tribal council members are entitled to immunity based on having acted within the scope of their authority. It additionally asserts that this case does not present "rare and unique" circumstances sufficient to invoke this court's pendent jurisdiction. See Gros v. City of Grand Prairie, 209 F.3d 431, 436 (5th Cir. 2000)("Pendent appellate jurisdiction should be exercised only in 'rare and unique' circumstances."). Finally, the Tribe contends that the oil companies' cross-

appeals are not in the interest of judicial economy and that this court lacks jurisdiction over them because a grant of sovereign immunity is capable of being fully and effectively reviewed upon final judgment. Burge v. Parish of St. Tammany, 187 F.3d 452, 467 (5th Cir. 1999).

We agree that the district court's tribal immunity ruling does not fit within the collateral order doctrine,[3] but find the oil companies' jurisdictional arguments compelling. Specifically, under TTEA, the appropriate question for both the Tribe and the tribal council members is whether the oil companies sought declaratory or injunctive relief. The record demonstrates an irrefutably affirmative response. Because the sovereign immunity challenges of the oil companies and the tribal council members stem from the same underlying lawsuit and involve overlapping issues of law and fact, we find that this case presents rare and unique circumstances sufficient for this court to exercise its pendent jurisdiction.

2.    Analysis

This Court reviews de novo the district court's conclusions about sovereign immunity. Kelly v. Syria Shell Petroleum Dev., 213 F.3d 841, 845 (5th Cir. 2000).

The district court failed to address the Tribe's sovereign immunity claim pursuant to TTEA. Relying on Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 118 S. Ct. 1700, 140 L. Ed. 2d 981 (1998), it noted that: "'As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.'" Comstock, 78 F. Supp. 2d at 592 (quoting Kiowa, 118 S.Ct. at 1702). The district court further

---

[3] See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S. Ct. 1221, 1225-1226, 93 L.Ed. 1528 (1949)(stating that conclusive decisions that resolve important issues apart from an action's underlying merits and that are effectively unreviewable on appeal from final judgment may be immediately appealed).

reasoned that Kiowa stands for the proposition that tribal immunity is applicable to contracts, including mineral leases. Id. Finding neither Congressional authorization nor express tribal waiver of immunity, the district court held that the Tribe continued to enjoy sovereign immunity and, thus, could not be properly brought before the court. Id.

We note, however, that in TTEA, this court aptly distinguished Kiowa as an action for damages rather than one for injunctive or declaratory relief and reasoned that: "This difference matters." TTEA, 181 F.3d at 680. Reviewing the district court's grant of the Tribe's motion to dismiss for lack of personal and subject matter jurisdiction, this court found that "the Tribe ha[d] sovereign immunity from an award of damages only." Id. Accordingly, it concluded that, "while the district court correctly dismissed the damages claim based on sovereign immunity, tribal immunity did not support its order dismissing the actions seeking declaratory and injunctive relief." Id. at 680-81.

In the case sub judice, the oil companies sought declaratory relief against the Tribe. TTEA is, therefore, dispositive on the issue of the tribe's asserted immunity. As such, we find that the district court erroneously concluded that the Tribe was entitled to sovereign immunity against the oil companies' claims for equitable relief.[4]

II.     Subject Matter Jurisdiction

        A.      Standard of Review

---

[4] We pretermit the oil companies' alternative argument that the Tribe waived its immunity by filing suit in federal court before seeking adjudication of its claims in the tribal court.

8

This court reviews legal determinations regarding the subject matter jurisdiction of a district court de novo. United States v. Alvarado, 201 F.3d 379, 381 (5th Cir. 2000); United States v. Urrabazo, 234 F.3d 904, 906 (5th Cir. 2000).

B.      Exhaustion of Remedies

Relying on National Farmers Union Insurance Co. v. Crow Tribe of Indians, 471 U.S. 845, 105 S. Ct. 2447, 85 L. Ed. 2d 818 (1985), the tribal council members claim that the district court could only properly review the tribal court's jurisdiction after the tribal court had received a full and fair opportunity to determine its own jurisdiction. See id. at 856 (stating that "policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge" and that "[e]xhaustion of tribal court remedies . . . will encourage tribal courts to explain the precise basis for accepting jurisdiction"). Thus, the tribal council members contend that the district court erred by not staying its consideration of the tribal court's existence and jurisdiction until after the oil companies had completely adjudicated their claims before the tribal court. The oil companies counter that, pursuant to 28 U.S.C. § 1331, the district court had jurisdiction to determine the tribal court's jurisdiction. See Nat'l Farmers, 471 U.S. at 852 ("The question whether an Indian tribe retains the power to compel a non-Indian . . . to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331."). They also note that tribal courts are generally allowed to determine the existence and extent of their jurisdiction before federal courts adjudicate the issue only as a matter of comity.

We find the latter argument availing because exhaustion of remedies is prudential and not jurisdictional. Strate v. A-1 Contractors, 520 U.S. 438, 453, 117 S. Ct. 1404, 137 L. Ed. 2d 661

9

(1997)("[T]his Court recognized . . . that the exhaustion rule stated in <u>Nat'l Farmers</u> was 'prudential,' not jurisdictional."); <u>TTEA</u>, 181 F.3d at 683 ("The exhaustion rule is prudential rather than jurisdictional."). The district court found that the Tribe's constitution and bylaws, as amended June 20, 1990, contained no provisions for the creation of a judiciary and that no evidence supports a finding that the constitution was properly amended to allow for the formation of a tribal judiciary. <u>Comstock</u>, 78 F. Supp. 2d at 600. Thus, the tribal judicial code, which was adopted after the Tribe dismissed its federal claim, impermissibly created the tribal court. <u>See id.</u>

Our review of the record supports the district court's findings. Because no tribal court properly existed, exhaustion was imprudent in the present dispute. <u>Id.</u> at 597 (agreeing that "if no tribal court exists, exhaustion of remedies is inapplicable"); <u>see also Johnson v. Gila River Indian Cmty.</u>, 174 F.3d 1032, 1036 (9th Cir. 1999)(holding that exhaustion is not required when there is a doubt that a functioning tribal court exists); <u>Krempel v. Prairie Island Cmty.</u>, 125 F.3d 621, 622 (8th Cir. 1997)(stating that "if there is no functioning tribal court, exhaustion would be futile"). Therefore, the district court did not err by exercising its jurisdiction to determine the existence and jurisdiction of the tribal court and in ruling that the oil companies were not required to exhaust their remedies in the tribal court before seeking a declaratory judgment in federal court.

C.    Oil and Gas Mineral Leases

Based on the extensive regulatory scheme involved in the administration of oil and gas leases on tribal lands, the district court opined that its authority to adjudicate the instant dispute was "beyond question." <u>Comstock</u>, 78 F. Supp. at 595 (citing The Indian Mineral Development Act of 1982, 25

U.S.C. §§ 2101-2108, C.F.R. Part 225, The Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396a-396d, and 25 C.F.R. §§ 211.19-.21).[5]

The tribal council members argue that under TTEA, the district court lacked jurisdiction to hear the oil companies' declaratory judgment action because the contested oil and gas leases were mere contracts. See TTEA, 183 F.3d at 681 ("The federal courts do not have jurisdiction to entertain routine contract actions involving Indian Tribes."). Moreover, they claim the district court should have exercised federal question jurisdiction over the oil companies' declaratory judgment action only if the statutory provisions provided the tribe with an unambiguous right to sue the oil companies. Because the federal statutes and regulations governing tribal oil and gas leases provide no such express right, the tribal council members contend that those provisions cannot furnish a basis for federal question jurisdiction over the oil companies' declaratory judgment action. See id. ("'Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendants brought a coercive action to enforce its rights, that suit would necessarily present a federal question.'")(quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 20, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)). The tribal council members further contend that, under TTEA, the district court lacked subject matter jurisdiction because the oil companies' declaratory judgment action involved no statute that provides for an implied right of action.

The oil companies counter that important distinctions exist between TTEA and the case at bar. They first observe that the declaratory judgment plaintiff in TTEA asserted jurisdiction based on the

---

[5] The district court reasoned that it additionally had jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. Comstock, 78 F. Supp. at 595. This conclusion was, however, erroneous. See TTEA, 181 F.3d at 681 ("The declaratory judgment statute offers no independent ground for jurisdiction.").

inapplicability of 25 U.S.C. § 81, which requires the Secretary of Interior to approve certain contracts between Indian tribes and non-members. See TTEA, 181 F.3d at 680. This court ultimately found that assertion inadequate to establish subject matter jurisdiction. Id. at 681 (reasoning that "the possibility that the Tribe might invoke § 81 as a defense to TTEA's action" cannot bestow federal jurisdiction because, "[u]nder the well-pleaded complaint rule, an anticipatory federal defense is insufficient for federal jurisdiction"). Second, the oil companies charge that unlike the smoke shop agreements at issue in TTEA, the contested oil and gas leases are not "routine contracts." They note that, although a precise definition for the term has not been established, the cases on which this court relied in TTEA to make the routine contract pronouncement each involved an action between an Indian tribe and non-members that was governed by general common law principles of contract. See Gila River Indian Cmty. v. Hennigson, Durham & Richardson, 626 F.2d 708 (9th Cir. 1980)(involving a suit for negligent design under an architectural design contract); Mescalero Apache Tribe v. Martinez, 519 F.2d 479 (10th Cir. 1975)(adjudicating a suit for breach of a construction contract). Finally, relying on Rainbow Resources, Inc. v. Calf Looking, 521 F. Supp. 682 (D. Mont. 1981),[6] the oil companies propound that the statutes regulating oil and gas mineral leases on tribal lands are indeed sufficient to provide for an implied right of action in federal courts.

---

[6] In Rainbow Resources, Inc., the plaintiff oil lessee, Rainbow Resources, Inc. ("Rainbow"), sought to block enforcement of a temporary restraining order issued in the Blackfeet Tribal Court, which prohibited Rainbow's removal of its equipment from the leased lands. Rainbow Resources, Inc., 521 F. Supp. at 682. The court concluded that: "Congress has chosen to grant exclusive authority for the regulation, administration and supervision of oil and gas leases on lands allotted to . . . Indians to the Secretary of the Interior. . . .[I]mplicit in this congressional act is a cause of action for declaratory and injunctive relief relating to enforcement of the regulations prescribed under 26 U.S.C. [§§] 396[a-396d]." Id. at 684.

12

The tribal council members' contentions are unavailing. In <u>Tenneco Oil Co., v. Sac & Fox Tribe of Indians of Oklahoma</u>, 725 F.2d 572, 574 (10th Cir. 1984), Tenneco Oil Company ("Tenneco") acquired an interest in an oil and gas lease with the Sac and Fox Tribe. The Sac and Fox Tribe subsequently enacted several ordinances designed to impose licensing, organizational, and taxation requirements on Tenneco and attempted to cancel Tenneco's lease. <u>Id.</u> Tenneco sued for declaratory and injunctive relief in federal court, but the district court granted the Sac and Fox Tribe's motion to dismiss, which alleged sovereign immunity and asserted that no federal question had been raised. <u>Id.</u>

On appeal, the Tenth Circuit reasoned that Tenneco's claim had raised a federal question. <u>Id.</u> at 575. It noted that, by its express terms, the lease provided that it "'shall be subject to the regulations of the Secretary of Interior now or hereafter in force . . . .'" <u>Id.</u> (citation omitted). It further opined that "the Tribal Leasing Act itself defers to and recites that it is intended to supplement the supervisory power of the Secretary of the Interior" and, therefore, held that federal question jurisdiction was present. <u>Id.</u>

Two years later, the court approvingly cited <u>Tenneco</u> during its discussion of another case that raised a jurisdictional issue regarding tribal oil and gas leases. <u>See Superior Oil Co. v. United States</u>, 798 F.2d 1324 (10th Cir. 1986). The Tenth Circuit emphasized its holding in <u>Tenneco</u> that federal question jurisdiction was present based on federal regulation of oil and gas leases. <u>Id.</u> at 1330. The court concluded, however, that exercise of that federal jurisdiction is proper only "*after* all available remedies have first been exhausted in the tribal court, *unless* exhaustion would be futile." <u>Id.</u> at 1331.

We agree with <u>Tenneco</u> and <u>Superior</u>. The federal regulations and statutes governing tribal oil and gas leases are adequate to invoke federal question jurisdiction over the instant dispute between

the Tribe and oil companies.[7] Moreover, this extensive regulatory scheme demonstrates that tribal oil and gas leases represent a very specialized subset of contracts and, therefore, compels the conclusion that they belie characterization as routine contracts. This is a significant distinction. Thus, we do not contradict the reasoning of TTEA[8] by adopting the rationale of our sister circuit and holding that the district court properly exercised jurisdiction over the oil companies' declaratory judgment action.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's ruling that the tribal court was not created in accordance with federally mandated procedures, that the illegitimately formed tribal court could not exercise jurisdiction over the instant tribal oil and gas lease dispute, that the oil companies were, therefore, not required to exhaust their remedies before the non-existent tribal court, and that the tribal council members are not entitled to sovereign immunity against the oil companies' declaratory judgment action in federal court. But we REVERSE the district court's ruling that the Tribe is entitled to sovereign immunity from the oil companies' suit and REMAND for proceedings consistent with this opinion.

REVERSED in part, AFFIRMED in part, and REMANDED.

---

[7]See Chuska Energy Co. v. Mobil Exploration & Producing N. Am., Inc., 854 F.2d 727, 729-30 (5th Cir. 1988)(observing that federal jurisdiction over the parties' case, which concerned an alleged breach of an oil and gas assignment involving Indian lands, would have been permissible "if Chuska had sued the Secretary of the Interior to approve the agreement or the Navajos to enforce the agreement").

[8] See TTEA, 181 F.3d at 681 ("The federal courts do not have jurisdiction to entertain *routine* contract actions involving Indian tribes.")(emphasis added).