COMSTOCK OIL & GAS, INC.,
et al., Plaintiffs,

v.

ALABAMA AND COUSHATTA
INDIAN TRIBES OF TEXAS,
et al., Defendants.

No. 9:99CV31.

United States District Court,
E.D. Texas,
Lufkin Division.

Dec. 28, 1999.

J. Robert Beatty, Elizabeth Ellen Mack, Bradley Carroll Weber, Locke Lidddell & Sapp, Dallas, TX, Stacy Lee Williams, Liddell Sapp Zivley Hill & LaBoon LLP, Houston, TX, for Comstock Oil & Gas, Inc.

Michael Thomas Powell, Haynes & Boone, Houston, TX, for Oryx Energy Co., Sun Operating Ltd. Partnership.

Kenneth R. Breitbeil, McFall Sherwood & Sheehy PC, Houston, TX, for Union Oil Co. of California.

Russell D. Leachman, Diamond Rash Gordon & Jackson, El Paso, TX, Keith D. Spickelmier, Michael David Sydow, Verner Liipfert Bernhard McPherson and Hand, Houston, TX, for Alabama and Coushatta Indian Tribes of Texas, Morris R. Bullock, Perry D. Williams, Melinda L. Sylestine, Kevin P. Battise, McClamroch Battise, Sidney Poncho, Edwin D. Battise.

Roger R. Martella, Jr., U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for Dept. of Interior.

## ORDER

PAUL N. BROWN, District Judge.

Pending before the court is Defendants' Motion to Dismiss the Original Complaint. The court, having considered the motion, responses, and replies, is of the opinion that the motion should be GRANTED IN PART and DENIED IN PART.

## INTRODUCTION

Defendant the Alabama and Coushatta Indian Tribes of Texas is a federally recognized Indian Tribe which controls lands set aside and held in trust for the Tribe as a reservation. *See* 25 U.S.C. §§ 731–37.

Between 1979 and 1993 Defendants signed several oil and gas mineral leases giving the right to explore and produce hydrocarbons.

On December 18, 1998, Defendants filed a suit against the oil companies, Plaintiffs in this action, in the tribal court of the Alabama and Coushatta Nation. There, the Tribe sought to have the leases declared null and void because of deficiencies in execution, or because they had not been approved by the Secretary of the Interior pursuant to 25 U.S.C. § 81, or for deficiencies in production. The Tribe also alleged that Plaintiff oil companies misappropriated natural gas liquids extracted from tribal lands.

On February 9, 1999, Plaintiff oil companies filed the instant action seeking declaratory relief stating that the tribal court is non-existent and that the leases are in full effect. The Tribe was named as a defendant along with Morris R. Bullock, Perry D. Williams, Melinda L. Sylestine, Kevin P. Battise, McClamroch Battise, Sydney Poncho, and Edward Battise, each a member of the Tribal Council. Defendants moved to dismiss the current action because the declaratory relief sought seeks to adjudicate the same facts as the underlying tribal court action. In addition, Defendants assert that sovereign immunity deprives this court of personal jurisdiction over the Tribe and the individuals in their official capacities. Defendants also assert a lack of subject matter jurisdiction because of a failure on behalf of Plaintiffs to exhaust tribal remedies.

### Legal Standard

### Subject Matter Jurisdiction and Personal Jurisdiction

A party seeking to invoke the jurisdiction of a federal court must demonstrate that the case rests within the court's jurisdiction. *Marathon Oil Co. v. Ruhrgas,* 145 F.3d 211, 216 (5th Cir.1998). "A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Communications Inc.,* 117 F.3d 900, 904 (5th Cir.1997). "When a defendant makes a 'factual attack' on the court's jurisdiction, the plaintiff must 'prove the existence of subject-matter jurisdiction by a preponderance of the evidence.' An attack is 'factual' rather than 'facial' if the defendant 'submits affidavits, testimony, or other evidentiary materials.'" *Irwin v. Veterans Admin.,* 874 F.2d 1092, 1096 (5th Cir.1989) (citations omitted).

An objection to personal jurisdiction by the defendant under Federal Rule of Civil Procedure 12(b)(2) requires the plaintiff to make a *prima facie* showing of personal jurisdiction. *Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir.1990); *Irving v. Owens–Corning Fiberglas Corp.,* 864 F.2d 383, 384 (5th Cir.), *cert. denied,* 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989). To satisfy this burden, the plaintiff need only present proof sufficient to constitute a *prima facie* case of personal jurisdiction. Proof by a preponderance of the evidence is not required. *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 545–46 (5th Cir.1985). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists. *Id.* at 546; *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.), *cert. denied,* 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994).

### DISCUSSION

### I. Personal Jurisdiction—

*A. Personal Jurisdiction over the Tribe —*

Defendants argue that sovereign immunity bars the bringing of suit against

the Tribe or the Tribal Council, as the governing body of the Tribe, because of a lack of personal jurisdiction. "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Oklahoma Tax Comm'n v. Citizen Band of Potawatomi Indian Tribe of Oklahoma,* 498 U.S. 505, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991) (citation omitted). Because of their sovereign status, tribes have traditionally enjoyed immunity from suit. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). More recently, the Supreme Court clarified the extent of immunity in *Kiowa Tribe of Okla. v. Manufacturing Tech., Inc.,* 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). There, the Court stated, "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Id.* at 1702 (citations omitted). *Kiowa* also stands for the proposition that tribal immunity extends to contracts between the Tribe and others such as the mineral leases now in dispute. *See id.* In *Kiowa,* the Court dealt with the distinction between applicability of state law to activities occurring off or on the Indian lands. More importantly for this case, the Court noted, "To say that substantive state laws apply to off-reservation conduct is not to say that a tribe no longer enjoys immunity from suit." *Id.* at 1703. In short, the Court concluded that tribes enjoy immunity from suits on contracts regardless of whether they involve commercial or governmental activities and regardless of whether they were made on or off the reservation. *See id.* at 1705.

■ Plaintiffs argue that Congress has abrogated the traditional sovereign immunity of tribes in the context of oil, gas, and mineral leases through the grant of exclusive jurisdiction to the Secretary of the Interior. They cite the opinion of a Montana District Court in *Rainbow Resources, Inc. v. Calf Looking,* 521 F.Supp. 682, 684

(D.Mont.1981), for the proposition that Congress abrogated immunity to allow for declaratory relief relating to the enforcement of federal regulations. While such a position is correct within the fact specific context of *Rainbow Resources,* that case cannot be read to constitute a general abrogation of immunity within the field of oil and gas on Indian lands. The case of *Superior Oil Co. v. United States,* 605 F.Supp. 674 (D.Utah 1985), *remanded on other grounds,* 798 F.2d 1324 (10th Cir. 1986), distinguished *Rainbow Resources* in a manner this court finds compelling. The court pointed out that *Rainbow Resources* involved a tribal judge's attempt to enjoin an action that a federal regulation required. On the facts in *Superior Oil,* the court stated that there was no such direct conflict between the requirements of federal regulations and tribal sovereignty and held that federal regulation did not preempt tribal regulation of oil and gas. Similarly, there is no direct conflict here and this court will not read *Rainbow Resources* as a complete abrogation of tribal immunity. In the numerous regulations governing oil and gas, there is no explicit waiver or abrogation of immunity, nor have Plaintiffs pointed to any explicit expression of Congressional intent to do so.

■ While tribal immunity is subject to the plenary control of Congress or waiver by the Tribe, it is well settled that a Congressional waiver of immunity "cannot be implied but must be unequivocally expressed." *Santa Clara, supra* at 1677 (citation omitted). Plaintiffs' position would require this court to infer a waiver of immunity from the extensive regulatory framework relating to oil, gas, and mineral leases on Indian lands. This is an inference the court is not willing to draw. There has been no express waiver of immunity in this case by Congress or the Tribe. Therefore, the Tribe continues to enjoy sovereign immunity and may not properly be brought before this court.

*B. Personal Jurisdiction over the Individual Defendants —*

■ Defendants also argue that the individual members of the Tribal Council enjoy the same sovereign immunity and should thereby be dismissed. To support this proposition, Defendants cite the Ninth Circuit cases of *Imperial Granite Co. v. Pala Band of Indians*, 940 F.2d 1269 (9th Cir.1991) and *United States v. Oregon*, 657 F.2d 1009 (9th Cir.1981), among others. *Imperial Granite* suggests that tribal immunity extends to declaratory relief and to tribal officials acting within the scope of their authority. Recent authority within the Fifth Circuit, binding on this court, indicates that Defendants' position is in error. *See TTEA v. Ysleta Del Sur Pueblo*, 181 F.3d 676 (5th Cir.1999). Much like this case, the plaintiffs in TTEA sought declaratory relief on a contract, though in that case the tribal court had already spoken on the matter. Though *Kiowa* clearly established the extension of sovereign immunity to contracts involving non-Indians, there is one important limitation to that holding. As the Fifth Circuit pointed out, *Kiowa* was an action for damages, not declaratory relief of the sort sought in this case—a distinction of significance. *See TTEA*, 181 F.3d 676, 1999 WL 507508 at *2. While the Tribe may enjoy sovereign immunity, as officers of the Tribe, the individual defendants do not share that immunity from suit in declaratory or injunctive actions. *See Santa Clara Pueblo, supra* at 1677; *TTEA, supra* at 679–80; *Puyallup Tribe, Inc. v. Department of Game of State of Washington*, 433 U.S. 165, 97 S.Ct. 2616, 2620–21, 53 L.Ed.2d 667 (1977); *cf. Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In *Puyallup*, the Supreme Court stated,

"[W]hether or not the Tribe itself may be sued in a state court without its consent or that of Congress, a suit to enjoin violations of state law by individual tribal members is permissible." *Id.* at 2621. While not addressing Tribal Council members, the Supreme Court in *Santa Clara* cited *Puyallup* for the proposition that a tribal governor was not immune from a suit for declaratory and injunctive relief. *See TTEA*, 181 F.3d 676, 679–80 (citing *Santa Clara*). As Judge Higginbotham pointed out, "The distinction between a suit for damages and one for declaratory or injunctive relief is immanently sensible.... State sovereign immunity does not preclude declaratory or injunctive relief against state officials. There is no reason that the federal common law doctrine of tribal sovereign immunity, a distinct but similar concept, should extend further than the now constitutionalized doctrine of state sovereign immunity." *Id.* (citing *Ex Parte Young*, 28 S.Ct. 441 (1908); *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). It seems clear that Fifth Circuit authority provides personal jurisdiction over members of the Tribal Council in a suit for declaratory or injunctive relief such as the case at bar without regard for scope of authority.[1]

■ Though the preceding is sufficient for the court to exercise personal jurisdiction over the individual defendants, the court will not ignore possible alternative grounds set out in Plaintiffs' argument that the individual defendants acted outside the scope of their authority and are thereby beyond the protection of sovereign immunity. Plaintiffs argue that the Tribal Council acted beyond the scope of their authority by seeking termination of the

---

1. Neither of the cases cited by Defendants address *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1928) and its progeny, which warrant consideration. The Fifth Circuit, in *TTEA*, mentioned *Ex Parte Young* to illustrate the distinction between the availability of declaratory relief and damages against officials. While *Ex Parte Young* was premised on acting outside the scope of official capacity, the opinion in *TTEA* does not require as much. The district court in *TTEA* dismissed the action because the acts were within the scope of authority of the officials. The Fifth Circuit in reversing made no finding that the individuals were outside the scope of authority, instead finding that declaratory and injunctive relief against individuals was not barred by tribal sovereign immunity.

lease agreements. They correctly cite C.F.R. Part 225 for the proposition that federal regulations set forth a comprehensive scheme for the management and termination of oil and gas leases on Indian land. To support their proposition that Defendants overstepped their authority, Plaintiffs argue that federal law provides the exclusive means for cancellation of oil, gas, and mineral leases on Indian lands and specifically cite 25 C.F.R. § 225.36. A close reading of § 225.36 reveals that Plaintiffs proposition is in error. First, § 225.36 provides the procedures necessary for a non-judicial unilateral termination of oil, gas, and mineral leases undertaken by the Secretary of the Interior. The process involves serving notice of non-compliance or proposed cancellation with responses sent to the Bureau of Indian Affairs. From there, if compliance with corrective measures in not attained, the Secretary may issue an order of cessation and ultimately an order of cancellation. *See* 25 C.F.R. § 225.36(a)–(g).

During the commentary period, prior to the final publication of the implementing regulations now found at 25 C.F.R. § 225.36, the exclusivity of the Secretary of the Interior's power regarding cancellation of leases was questioned and clarified. The power to unilaterally terminate leases in the manner set forth in § 225.36 is vested exclusively with the Secretary. *See* 59 F.R. 14960, 14970 ("Under these regulations, the Secretary has the exclusive right of cancellation by virtue of the sole right of approval of a minerals agreement. Therefore, the Secretary retains the right to cancel a minerals agreement in the face of a violation of the provisions of the minerals agreement or any applicable law, regulation, or order.")

If the Tribe or Tribal Council was purporting to unilaterally cancel the lease, they would be encroaching on the exclusive authority of the Secretary of the Interior and thereby acting outside the scope of their authority. However, if one reads on in § 225.36, one will see that seeking judicial recourse for the cancellation of lease agreements, such as the Tribe is seeking here is not precluded. *See* 25 C.F.R. § 225.36(h) ("This section does not limit any other remedies of the Indian mineral owner as set forth in the minerals agreement."). As the commentary on the regulation continues with the sentence following the section referenced *supra*, the comments explicitly reaffirm the nonforeclosure of tribal recourse. *See* 59 F.R. 14960, 14970 ("There is no impairment of the independent authority of an Indian mineral owner to bring an action in a court of competent jurisdiction for cancellation of a minerals agreement if adequate grounds exist under applicable law."). Thus, by seeking judicial termination of the lease agreement rather than a unilateral, non-judicial termination, the members of the Tribal Council have not encroached upon the exclusive authority of the Secretary of the Interior and have not acted outside the scope of their authority.

The above referenced authorization to seek judicial recourse in a court of "competent jurisdiction" leads to Plaintiffs' second argument for the proposition that the members of the Tribal Council acted outside the scope of their authority. Plaintiffs argue that Defendants acted outside the scope of their authority by seeking judicial cancellation in an allegedly nonexistent tribal court. To the extent that objection turns on the pursuit of judicial cancellation, it has been addressed above. To the extent Plaintiffs argue that no entity has authority to pursue remedies in a non-existent court, they take too narrow a view of the actions of the Tribal Council. The actions which must fall within the authority of the Tribal Council are not the pursuit of remedies specifically within a particular court, but the pursuit of judicial recourse in general—something for which the Tribal Council has adequate authority. As for the particular court, one would not suggest that the individuals acted outside the scope of their authority if they wrongfully removed, or filed in a court that

ultimately lacked jurisdiction. Likewise, the members of the Tribal Council properly sought judicial recourse, though Plaintiffs are free to argue that they did so in a court that may ultimately be determined to be improperly formed or lack jurisdiction.[2]

## II. Subject Matter Jurisdiction—

Defendants object to this court exercising subject matter jurisdiction, not because the court lacks the necessary authority, but based on the prudential policy that parties should exhaust available tribal remedies prior to instituting suit in federal court. *See National Farmers Union Ins. Companies v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987).

There are two distinct issues that this court must resolve and thus two aspects of this court's jurisdiction that must be established. On one level, the court must have jurisdiction over the underlying dispute regarding the validity of oil and gas leases on Indian lands except to the extent exhaustion might dictate that this court refrain from exercising that jurisdiction—a scenario which will be discussed below. On a second level, the Defendants' motion challenges this court's jurisdiction to determine the existence and jurisdiction of the tribal court.

### A. Jurisdiction Over the Underlying Dispute —

 The jurisdiction of this court, as a simple matter of the authority to adjudicate disputes of this type, is beyond question. The underlying cause of action presents federal questions under 28 U.S.C. § 1331 that arise under 25 U.S.C. 2101–2108 and C.F.R. Part 225. The court also

has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. Moreover, according to Defendants' petition in the tribal court, their complaint turns on interpretation of 25 U.S.C. § 81 and 25 U.S.C. § 177. In addition, leases on Indian lands are impacted by the Indian Mineral Leasing Act of 1938 (IMLA), 25 U.S.C. §§ 396a–396d and the implementing regulations found at 25 C.F.R. §§ 211.19–.21 as well as the Indian Mineral Development Act of 1982 (IMLA), 25 U.S.C. §§ 2101–08. At least two of the leases in question were granted after the passage of the IMDA, and the Bureau of Indian Affairs oversees all of the leases pursuant to the IMDA.

Jurisdiction in this court has also been alleged under 28 U.S.C. § 1362 which states, "The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." *Id.*

### B. Jurisdiction to Assess Existence of Tribal Court —

 The Supreme Court has determined that a district court has subject matter jurisdiction to determine the scope and existence of tribal court jurisdiction. *See National Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 2452, 85 L.Ed.2d 818 (1985) ("The question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the jurisdiction of a tribal court is one that must be answered by reference to federal law, and is a 'federal question' under § 1331."). The Fifth Circuit recently reaffirmed that such issues present a federal question under 28 U.S.C. § 1331 in *TTEA v. Ysleta*

---

**2.** Plaintiffs have argued extensively in this section of their response over the existence of the tribal court. Because personal jurisdiction can be decided on other grounds and does not rely on the legitimacy of the tribal court in determining the scope of the coun-

cil's authority, the legitimacy of the tribal court will not be addressed in this section. It will be addressed below in the section dealing with subject matter jurisdiction as it pertains to the exhaustion of tribal remedies.

*Del Sur Pueblo,* 181 F.3d 676 (5th Cir. 1999) (holding that district courts have "subject matter jurisdiction to determine whether the tribal court was improperly exercising jurisdiction."). Though these present federal questions properly within the purview of a United States District Court, the Supreme Court has also stated that a federal court should stay its hand "until after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made." *National Farmers,* 105 S.Ct. at 2454. However, in this case, the court is faced with a scenario in which one possible outcome of the jurisdictional analysis is the non-existence of a tribal court, in which case there would be no reason to refrain from exercising the court's jurisdiction.

Defendants have urged that the question of the legitimacy of the tribal court is one for the tribal court to consider. (Def.Rep. to Comstock Resp., p. 4) (citing *Basil Cook Enters. v. St. Regis Mohawk Tribe,* 117 F.3d 61 (2nd Cir.1997)). However, *Basil Cook* did not address the question under the same circumstances and is distinguishable. In *Basil Cook,* the challenge to the tribal court involved allegations that the tribal court was created in contravention of tribal law. Allegedly, the Tribe failed to comply with the procedure set forth in the tribal constitution. As such, the district court was called upon to construe tribal law, something which federal courts should not do under the doctrine of exhaustion of tribal remedies established in *National Farmers.* In *Basil Cook,* the court stayed its hand because the existence of remedies at tribal law was facially apparent. They stated, "[J]udicial recourse, encompassing trial and appeal, is provided for in the tribal constitution . . . ." *Basil Cook,* 117 F.3d at 66. In the case at bar, there is no such provision in the tribal constitution of the Alabama and Coushatta Tribes of Texas. *See Constitution and By Laws of The Alabama–Coushatta Tribes of Texas (as amended June 20, 1990).* This court is not called upon to construe the tribal constitution or to monitor compliance therewith.

Instead, as Plaintiffs suggest, we are construing federal law to determine if the creation of the tribal court complies with the procedures set forth in the Restoration Act and the implementing regulations. *See* 25 U.S.C. §§ 731–737; 25 C.F.R. Part 81.

### C. Application of Doctrine of Tribal Exhaustion —

Plaintiffs have responded to Defendants' argument requiring exhaustion of tribal remedies in two parts. First, they argue that tribal exhaustion does not apply because the tribal court does not properly exist and, second, they argue that even if exhaustion applied, the tribal court lacks the authority to adjudicate this matter. The argument that exhaustion does not apply is also, in essence, a two-fold assertion. One argument contained within such an assertion is that the doctrine simply does not pertain to the facts at hand because, where there is no tribal court, there are no tribal remedies to be pursued and ultimately exhausted. The second argument is that, should exhaustion apply in these types of cases, given the specific facts, an exception precludes the requirement of exhaustion in this case. The exceptions on which Plaintiffs rely are found in *National Farmers,* 105 S.Ct. at 2454, n. 21. There, the Supreme Court acknowledged that the doctrine of tribal exhaustion is inapplicable in three circumstances. Those are:

(1) "where an assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith.'" *Id.*

(2) "where an action is patently violative of express jurisdictional prohibitions," *Id.* or

(3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *Id.*

Plaintiffs rely on the first of these exceptions and suggest that filing in a non-existent court is acting in bad faith. Obvi-

ously, the validity of either objection by Plaintiffs, bad faith or that exhaustion simply does not apply, turns on the proposition that the tribal court does not properly exist under law and is without authority.

The court agrees with Plaintiffs' proposition that, if no tribal court exists, exhaustion of remedies is inapplicable. Such a position is supported in several ways. First, sheer common sense indicates that if there are no existing remedies, there is nothing to exhaust. Secondly, and related to the first, such a scenario may not fall within the scope of the language discussing the scope of the doctrine as found in *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 978, 94 L.Ed.2d 10 (1987) (requiring that a petitioner "exhaust all available tribal remedies before instituting suit"). Plaintiff emphasized the use of the word "available" to illustrate that one could hardly consider a non-existent court as an available remedy. Though the context of the statement within *Iowa Mutual* may not warrant such emphasis on that particular use of words, the same concept finds support in *National Farmers.* There, the court discussed the notion that an examination of tribal jurisdiction "should be conducted in the first instance in the Tribal Court itself." *National Farmers Union,* 105 S.Ct. at 2454. Implicit within that notion is that the tribal court actually and properly exist. Under these circumstances we are not assessing the mere jurisdiction of the court but the actual existence of the court. As such, this court is not usurping any role of the tribal court in determining its own existence.

Because the court agrees that, in the event the tribal court does not exist, the doctrine of exhaustion has no application, the court will proceed to discuss the tribal court, and will not address the applicability of exceptions.[3]

The opinion in *TTEA,* 181 F.3d 676 (5th Cir.1999), discussed earlier in relation to availability of declaratory relief and personal jurisdiction, is also helpful in the discussion of subject matter jurisdiction and exhaustion of tribal remedies. Defendants argue that the subject matter jurisdiction issues in *TTEA* are identical to the case at bar and therefore dispositive. (Def.Supp.Br. at 2) Plaintiffs, on the other hand, argue that *TTEA* is inapposite because it depended on construction of statutes inapplicable to this case and involved no question as to the legitimacy of the tribal court. The court will not accept either argument in full. Beyond the discussion of *TTEA* regarding availability of declaratory relief and personal jurisdiction, *TTEA* is instructive as to the requirements of exhaustion. Defendants fail to grasp the issues in this case that set it apart from the facts of *TTEA.* While correct in asserting that Judge Higginbotham, in *TTEA,* stated that a plaintiff must point to some statute conferring a right to sue, and that the Restoration Act does not confer the ability to sue the Tribe, this court is faced with a different issue. The court has already noted that there is no authority to sue the Tribe as an immune sovereign. The primary difference from *TTEA* is that Plaintiffs here have questioned the legitimacy of the tribal court. *TTEA* appears to have taken the legitimacy of the tribal court as established. The question of the tribal court's legitimacy, as noted earlier, is a federal question and alters the applicability of *TTEA.* Moreover, while true that the declaratory judgment statute does not confer jurisdiction in and of itself, this court has already noted the independent basis for subject matter jurisdiction. *See, supra,* pp. 13–19. In the absence of a validly created tribal court, this court would have no reason to pursue the prudential doctrine of tribal exhaustion and

---

**3.** As noted, Plaintiffs have also argued for the bad faith exception to the application of the exhaustion doctrine. Though the court will not address it, Plaintiffs' argument is not without merit given the totality of the circum-

stances in this case: the filing in federal court, voluntary dismissal, and refiling in a tribal court, as well as an attempt to amend the tribal constitution some two months later.

would properly exercise jurisdiction pursuant to the sections discussed *supra*.

While the court needs no authority for the apparent proposition that exhaustion of tribal remedies in a non-existent tribal court would be futile, Plaintiffs cite *Krempel v. Prairie Island Indian Community*, 125 F.3d 621 (8th Cir.1997), to support their argument that exhaustion is not required where a tribal court does not exist at the time a given action is instituted. *Krempel* was slightly different from the case at hand in that the existence of the tribal court at the time of filing suit was not questioned. Moreover, *Krempel* is not authority in this circuit. However, some of the language is helpful. The *Krempel* court found it "inherently unfair to a plaintiff to require exhaustion in a court that was not operational until after the claim was filed." *Id.* at 622. The court went on to consider the policies underlying exhaustion. Given that exhaustion is a prudential, not jurisdictional, doctrine, the application of such a doctrine should depend on the purposes it is intended to serve. *See Strate v. A–1 Contractors*, 520 U.S. 438, 117 S.Ct. 1404, 1411, 137 L.Ed.2d 661 (1997) ("In sum we do not extract from *National Farmers* anything more than a prudential exhaustion rule").

■■■ The public policies served by the exhaustion of remedies doctrine are as follows: (1) to protect administrative agency authority, and (2) to promote judicial efficiency. *McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The foregoing was taken from the Supreme Court's discussion of exhaustion of administrative remedies and, in order to be applicable to this case, the first consideration should be to protect tribal authority. The second consideration, preservation of judicial economy, dictates that inadequate administrative remedies need not be exhausted. *See Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp.*, 489 U.S. 561, 109 S.Ct. 1361, 1375, 103 L.Ed.2d 602 (1989). Under the abstention analogy to a federal court staying its hand in favor of state courts, if the state court is inadequate, abstention is not warranted. *See Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488 (1973). In assessing an administrative remedy, the Court in *Gibson v. Berryhill*, stated that a tribunal that is unconstitutionally constituted is inadequate. *See id.* at 1696. Likewise, if an agency lacks the power to grant effective relief, or is biased, then abstention is not necessary. *Id.* at 1696 n. 14. From the above, it appears that Plaintiffs' argument that exhaustion is futile and not required if the court does not exist, has support in the law. As the Eighth Circuit pointed out, "[T]o urge that a plaintiff must exhaust his tribal remedies at a time when a tribal court does not exist would, indeed, inject a futile requirement." *Krempel*, 125 F.3d at 623.

### D. Existence of the Tribal Court —

■■■ In arguing the actual existence of the tribal court, Plaintiffs first cite the lack of a listing of the Alabama–Coushatta Tribal Court in the Bureau of Indian Affairs clearing house. (Pl.Resp. p. 6) Plaintiffs argue that such an absence should cause this court to take judicial notice of the non-existence of the tribal court pursuant to F.R.E. 201. Under federal law, the Department of the Interior is required to maintain an information clearinghouse on tribal justice systems. (Pl.Resp. p. 6 (citing 25 U.S.C. § 3611(f))) The only fact of which this court might take notice is the absence of the tribal court from the list maintained by the Bureau of Indian Affairs. One could conclude from that absence that either, the court does not exist, or that it does and the list is inaccurate. The absence is by no means conclusive proof that the tribal court does not exist and not sufficient to warrant judicial notice pursuant to F.R.E. 201.

Defendants' argument that the tribal court rightfully exists is supported in part by the affidavit of the purported Clerk of the Tribal Court and a letter from Judge

Carolyn Marks Johnson regarding a pretrial status conference. (Def.Rep. to Comstock Resp., Exh. A, B) While the Tribe does not suggest that this evidence rises to a level worthy of F.R.E. 201 judicial notice, it suffers from the same weakness as the argument by Plaintiffs addressed in the preceding paragraph. The affidavit by JoAnn Battise does little more than assert that, according to her, the tribal court was "duly created by act of the Tribal Council pursuant to the Constitution of the Alabama and Coushatta Indian Tribes of Texas...." (Def.Exh.B) Ultimately, that is the question which this court is called upon to resolve and Ms. Battise's conclusory statement is not competent evidence to establish the legal determination that the tribal court is duly created. In fact, there is no reference in the affidavit as to which sections of the Tribe's constitution allow for the creation of a tribal court or the procedure through which the council complied. The second exhibit, the letter of Carolyn Marks Johnson, establishes only that the affiant is operating as if the court existed. She does not purport to establish the rightful existence of the court, she merely proceeds as if there is no dispute as to its jurisdiction or legitimacy. The only thing established by these exhibits is that the tribal court has, under the presumption that it is rightfully formed, named a clerk of the court, and contracted with a judge.

At one point, Defendants also argue that "the ability of Indian tribes to establish tribunals which adjudicate disputes is an inherent attribute of sovereignty." (Def.Rep. to Oryx Resp. P. 9) To support this position they note that many tribes have established their own court systems and that "the United States Supreme Court has given great deference to tribal courts, noting that 'the federal policy of promoting tribal self government encompasses the development of the entire Tribal Court system.'" Def.Rep. to Oryx Resp. P. 9) (citing *Iowa Mutual*). They further argue that, when considering such federal policy and the statutes which Congress has enacted to promote tribal courts,

"The proper inference to be drawn ... is that the Tribe may create its own Court system." (Def.Rep. to Oryx Resp. P. 9) (citing 25 U.S.C. § 3611 *et seq.*). This court has no difficulty with an inference that Tribes may create their own judiciary. It is true that many tribes have done so. The challenge here lies not against the ability of Indian tribes to form judicial systems as a general principle, but with the ability of this particular tribe to do so in the manner they pursued. While it is true that many other tribes have established court systems, most scenarios that this court has reviewed involve powers within the tribal constitution. *See, e.g., Basil Cook.* The problem, as the court sees it, is a lack of authority within the tribal constitution to form a judiciary for the Alabama and Coushatta Tribes of Texas.

The statement on which Defendants rely from *Iowa Mutual* cannot be read so broadly as to constitute authority for the proposition that a tribe possesses inherent power to simply create a court by any means. *Iowa Mutual* is a decision on the requirements of exhaustion and the reference to "development of the *entire* Tribal court system" (emphasis added) is best read in that context to require tribal appellate review, once in the tribal system, before invoking the jurisdiction of federal courts. It is not authority for a general inherent power justifying the wholesale creation of a tribal court. As Defendants suggest, the proper inference to be drawn is that tribes may create their own courts. Even granting that a tribe may create its own court system, it must do so within the guidelines set forth in the statutes conferring such power and implementing the federal policy on which Defendants seek to rely, in this case, the Restoration Act, 25 U.S.C. §§ 731–37 and 25 C.F.R. Part 81.

The United States Code contains numerous regulations and procedures regarding administration of Indian tribes and their organizational structure. *See, e.g.,* 25 U.S.C. § 476, 735; 25 C.F.R. Part 81.

Specifically in regard to the Alabama–Coushatta Tribes, the Restoration Act approved the constitution and by-laws of the Tribe that were in effect as of June 16, 1971. *See* 25 U.S.C. §§ 731(5), 734(b). In addition, the code provides a procedure through which amendments may be made to the constitution through elections called by the Secretary of the Interior. *See* 25 U.S.C. §§ 476(a), (d), 735; 25 C.F.R. § 81.3, 81.5, 81.7, 81.24. According to the undisputed evidence before the court, the current form of the Tribe's constitution is as amended June 20, 1990. (Affd. Bradley C. Weber, Exh. D, E; Affd. of Sharon R. Fancher; Affd. of J. Robert Beatty) In that constitution, there are no provisions for the creation of a judiciary. (Weber Affd., Exh. E) There is no evidence before the court that suggests any amendment to allow for the formation of a judiciary. In fact, there is evidence to the contrary. A letter from the Bureau of Indian Affairs, included as Exhibit D to the affidavit of Bradley C. Weber, and responsive to a Freedom of Information Act request, indicates that no records are available regarding the Tribe's tribal court system. In addition, the Bureau of Indian Affairs included in their response, and Mr. Weber included in his affidavit as Exhibit F, a proposed amended constitution and bylaws which include a section providing for a judiciary, as well as the request from JoAnn Battise to hold an election for adoption of the amended constitution and by-laws, an election which has not, to date, occurred. (Weber Affd., Exh. F, Art. X).

The Tribe argues that there is no need for an amendment because the tribal constitution, even in its current state, provides a legitimate basis for creating a tribal court. They cite Art. IV, Section 1.h. which empowers the Tribal Council:

> To safeguard and promote the peace, safety, morals, and general welfare of the tribe by regulating the conduct of trade and the use and disposition of

property upon the reservation; provided, that non-restricted property of members which was obtained outside of any help or assistance of the Government of the tribe may be disposed of by the owner without restrictions. *Constitution and By Laws of The Alabama–Coushatta Tribes of Texas (as amended June 20, 1990),* Art. IV, Sect. 1.h.

In addition they cite Art. IV, section 1.n. which allows the council to "protect and preserve the property, wild life(sic), and natural resources of the tribe." *Id.* Neither of these provisions speak to the formation of, or constitutional authority to form, a judiciary. Clearly, the language established regulatory control or legislative control of various aspects of tribal life. However, it strains credulity to suggest that this language empowers the creation of a judicial branch of tribal government, and the mere allegation that citation of an irrelevant passage requires construction of the tribal constitution will not cause this court to stay its hand under the prudential doctrine of exhaustion. The Tribe argues that nothing in federal law preempts a tribal court. While correct, this statement places the cart before the horse. It is not that federal law would preempt the formation of the court, rather federal law has set forth the procedure through which tribes may pursue self-government. Pursuant to 25 U.S.C. §§ 435, 734(b), 735 and the implementing regulations found in 25 C.F.R. Part 81, the Tribe established a constitution when under federal supervision. Those codes and statutes provide the means by which the Tribe may amend or alter a constitution. They have not properly done so and the constitution as amended June 20, 1990 is the ruling authority for tribe and council. Under that authority, there is no provision for a valid tribal court such as the one purportedly created December 14, 1998 by the adoption of a tribal judicial code.[4]

---

**4.** As noted in the introduction to this section, *supra* p. 596, Plaintiffs have also asserted that

the tribal court, if it existed, would not have authority over the underlying case because it

### III. Motion to Dismiss for Failure to Join an Indispensable Party—

██ Defendants urge that the entire complaint be dismissed pursuant to Fed. R.Civ.P. 12(b)(7) because the Tribe, having been found immune, is an indispensable party under Fed.R.Civ.P. 19. Under the Rule 19 analysis, a court is to determine "whether in equity and good conscience the action should proceed among the parties before it." FED.R.CIV.P. 19(b). Rule 19(b) also sets forth factors to determine if a party is indispensable. Those factors include, "to what extent a judgment rendered in the [party]'s absence might be prejudicial to the [party] or those already parties; second, the extent to which, by protective measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the [party]'s absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder." FED.R.CIV.P. 19(b).

The first factor, the extent of prejudice resulting from a judgment rendered in the absence of the party, favors nondismissal. In this case, the likelihood of prejudice to the Tribe is minimized by the presence of the members of the Tribal Council as well as the Secretary of the Interior, who operates in a trustee capacity in these matters pursuant to the Indian Minerals Development Act of 1982, 25 U.S.C. §§ 2101–08 ("The Secretary shall continue to have a trust obligation to ensure that the rights of a tribe or any individual Indian are protected in the event of a violation of the terms of any Minerals Agreement, by any other party to such agreement . . ."). Admittedly, there is little this court could do in accordance with the second factor to fashion a remedy to minimize the prejudice

that the absent party, might suffer. However, because the risk of prejudice is low due to the presence of the Tribal Council and the Secretary of the Interior, the need for such precautions is minimized.

The third factor tests the adequacy of a remedy rendered in the absence of the third party. As the Supreme Court indicated in *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), this requirement refers to considerations of judicial economy and to a "public stake in settling disputes by wholes." *Id.* at 739. It seems that adjudication of this dispute, with the Tribal Council and Secretary of the Interior present, will dispose of all matters, either by enjoining further repudiation of the leases, or declaring them invalid or breached. In either case, such a remedy would be the complete remedy sought and fully adequate.

The most influential factor of the Rule 19(b) analysis is the fourth, which tests whether Plaintiff would have an adequate remedy if this suit is dismissed for non-joinder. " 'The fourth factor, looking to the practical effects of a dismissal, indicates that the court should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where joinder would be possible.' " 7 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1608 n. 40 (quoting 1966 Advisory Committee Note to Rule 19). As Professor Wright has noted, "Often dismissal is not a hardship because plaintiff will be able to bring the action in another federal court or in a state court which frequently is a more appropriate tribunal. . . ." *Id.* at § 1608 (text accompa-

lacks jurisdiction over non-member activities on non-Indian lands pursuant to *Strate v. A–1 Contractors,* 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). Though the court has decided that the tribal court does not properly exist, if it did, the tribal court would have jurisdiction. The Supreme Court in *Strate* stated, "Subject to controlling provisions in treaties and statutes, and the two

exceptions in *Montana,* the civil authority of Indian tribes and their courts with respect to non-Indian fee lands 'generally do[es] not extend to the activities of nonmembers of the tribe.' " *Id.* at 1412. However, the first exception in *Montana* confers jurisdiction in matters relating to "the activities of nonmembers who enter consensual relationships with the tribe or its members." *Id.*

602

nying n. 40–42). This court will not discuss the possible jurisdiction of a state court in this matter because the Tribe would retain its defense of sovereign immunity and filing in state court would not remedy the difficulties facing Plaintiffs in this court.

Moreover, having decided that the tribal court does not properly exist, the tribal court does not provide an available alternate forum. In the absence of a state court or tribal court with proper jurisdiction, Plaintiffs would be without remedy if this action were dismissed pursuant to Fed.R.Civ.P. 19. Therefore, the fourth factor of 19(b) favors Plaintiff and does not require dismissal for nonjoinder of the Tribe.

Defendants have cited several cases to support their claim that this case should be dismissed for nonjoinder of an indispensable party. The authority on which they rely can best be read as authority for the proposition that a party to a contract is always an indispensable party to a suit to set aside that contract. *See Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537, 540 (" 'no procedural principle is more deeply embedded in the common law than that, in an action to set aside a lease or contract, all parties who may be affected by the determination of the action are indispensable.' " (citations omitted)). At the outset, it should be noted that none of the cited cases are authority in this circuit. Additionally, each is distinguishable from the case presently before this court.

Plaintiffs rely on *Jicarilla*, which affirmed a district court dismissal for nonjoinder of an immune tribe as an indispensable party. The appellate court did not discuss the four factors for consideration in Rule 19(b), nor was there any mention of the Tribal Council members' presence. If the principle stated in *Jicarilla* was a firm rule, it would eliminate a court's discretion in determining whether to dismiss under Fed.R.Civ.P. 19. Moreover, the underlying district court case involved no action against the individual members of the tribe and the relief sought was for damages on a counterclaim. In this case, this court has already determined that it has jurisdiction over the individual defendants for declaratory and injunctive relief. In the absence of the Secretary of the Interior and the members of the Tribal Council, the *Jicarilla* holding might be persuasive. However, their presence and the considerations given under Rule 19(b) adequately protect the interests of the Tribe in the face of no alternative forum.

The second case on which Defendants rely is *Enterprise Mgmt. Consultants v. United States ex rel Hodel*, 883 F.2d 890 (10th Cir.1989). That case relies on *Jicarilla* to a large extent and thus suffers from the same inapplicability to these facts. Moreover, the Tenth Circuit noted that some courts have considered whether the United States might adequately represent the interests of the immune party by virtue of a fiduciary duty. *See id.* at 894 (citing *Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765 774–75 (D.C.Cir.1986)). Though the Tenth Circuit held that the absence of the tribe was something which the presence of the government could not overcome, that was in the context of bingo gaming and not under an act such as the IMDA, which creates a statutory trust obligation.

In *Fluent v. Salamanca Indian Lease Authority*, 928 F.2d 542 (2nd Cir.1991), the court upheld a dismissal of an action holding that a tribe was an indispensable party. That case, which relied on *Enterprise Management* and, in turn *Jicarilla*, will not be followed by this court. The *Fluent* court, along with *Enterprise Management*, cites *Moore's Federal Practice* for the proposition that where an indispensable party is immune from suit, there is little room for consideration of the other factors in Rule 19. *Id.* at 548 (citations omitted). Such a proposition should not be read as an absolute exclusion of all other factors in Rule 19. Moreover, recent Fifth Circuit authority permits jurisdiction over individ-

ual members of the Tribal Council without the tribe's presence. *See TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676 (5th Cir. 1999). Implicit within that holding is that tribal immunity does not automatically result in dismissal of the entire action.

In *United States Ex Rel Hall v. Tribal Development Corp.*, 100 F.3d 476 (7th Cir. 1996), the Seventh Circuit refused to find the tribe adequately represented in that *qui tam* suit, because of the possibility that the tribe would be aligned against the United States. In considering the Rule 19 factors, the court noted that there was no way to fashion relief to lessen the prejudice to the Tribe's interest because any relief would void the contract at issue. The court stated, "Although in some circumstances the interests of the United States and an absent tribe might be so aligned as to alleviate any concern for the tribe's ability to protect its interest, that is not always the case." *Id.* at 479. In our case, there seems to be no risk that the United States would be misaligned due to the trust obligation of the Secretary to safeguard the interests of the Indians pursuant to the IMDA.

Defendants' cited cases are not binding on this court and are distinguishable on their facts. When considered with recent Fifth Circuit authority, this court determines that the Tribe is not an indispensable party to this action because it is adequately represented through the trust relationship with the Secretary of the Interior and the presence of members of the Tribal Council.

### CONCLUSION

Having determined that there is no waiver by the Tribe of its sovereign immunity and that Congress has not explicitly waived immunity of the Tribe, that portion seeking to dismiss this cause of action for a lack of personal jurisdiction over the Tribe should be GRANTED. The individual tribe members, however, are not shielded from suit in this action and that portion of the motion seeking to dismiss the individual defendants for a lack of personal jurisdiction should be DENIED. In determining that the tribal court is not properly constituted, the doctrine of exhaustion of tribal remedies is inapplicable and is no bar to this court's exercise of subject matter jurisdiction. The relief sought for a lack of subject matter jurisdiction should be DENIED. The motion to dismiss for failure to join an indispensable party should be DENIED.

IT IS SO ORDERED.